PD-1537-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/15/2015 1:49:11 PM
Accepted 1/15/2015 5:10:51 PM
ABEL ACOSTA
CLERK

**NO. PD-1537-14**

**IN THE**
**COURT OF CRIMINAL APPEALS OF TEXAS**


**BENNIE FUELBERG,**
**Appellant**

**VS.**

**THE STATE OF TEXAS,**
**Appellee**

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

ON REVIEW FROM THE COURT OF APPEALS FOR THE
THIRD JUDICIAL DISTRICT OF TEXAS,
AT AUSTIN, TEXAS

DAVID L. BOTSFORD
State Bar No. 02687950
Botsford & Roark
1307 West Ave.
Austin, Texas 78701
(512) 479-8030 (Tel)
(512) 479-8040 (Fax)
dbotsford@aol.com (Email)

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF JUDGE, PARTIES AND COUNSEL

**Judges:**

Honorable Bert Richardson, for pretrial hearings on assigned motions, only.

Honorable Dan Mills, for some pretrial hearings and at trial.

**Counsel For The State**:

**At Trial**: Harry White, Eric Nichols, Tom Cloudt, Deputy Attorney Generals, P.O. Box 12548, Austin, Texas, 78711

**On Appeal**: Jessica Hartsell, Assistant Attorney General, P.O. Box 12548, Austin, Texas 78711, Bill Davis, Assistant Solicitor, P.O. Box 12548 (MC 059), Austin, Texas, 78711-2548

**On PDR**: Bill Davis, Assistant Solicitor, P.O. Box 12548 (MC 059), Austin, Texas, 78711-2548; Lisa McMinn, P.O. Box 13046, Austin, Texas, 78711

**Counsel For Appellant**:

**At Trial**: Chris Gunter and Gene Anthes, 600 West 9th Street, Austin, Texas, 78701, Charles Grigson, 604 W. 12th Street, Austin, Texas 78701

**On Appeal**: David L. Botsford (Lead Counsel),[1] 1307 West Avenue, Austin, Texas, 78701; Chris Gunter & Charles Grigson

**On PDR**: David L. Botsford 1307 West Avenue, Austin, Texas, 78701.

---

[1] David L. Botsford also made a limited appearance in the district court in connection with the State's unsuccessful motion to recuse Chris Gunter.

# TABLE OF CONTENTS

Identity Of Judge, Parties And Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index Of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Of The Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Of The Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Grounds For Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

　　　Ground For Review No. 1: The Court Of Appeals Erred By Holding
　　　That Judge Mills Was Not Disqualified.

　　　Ground For Review No. 2: The Court Of Appeals Erred By Holding
　　　That Judge Richardson Did Not Abuse His Discretion By Finding That
　　　Judge Mills Was Not Subject To Recusal.

　　　Ground For Review No. 3: The Court Of Appeals Erred By Holding
　　　That Judge Mills Did Not Abuse His Discretion By Overruling
　　　Fuelberg's Objections To The Admissibility Of Alleged Co-conspirator
　　　Statements That Were Not Made During The Course Of Or In
　　　Furtherance Of Any Conspiracy.

Reasons For Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Discussion Of Grounds For Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

　　　Ground For Review No. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

　　　Ground For Review No. 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

　　　Ground For Review No. 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion And Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate Of Compliance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate Of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Opinion Of Court Of Appeals: August 27, 2013. . . . . . . . . . . . . . . . . . . . . TAB #1

Order Of Court of Appeals: January 7, 2014. . . . . . . . . . . . . . . . . . . . . . TAB #2

Opinion Of Court Of Appeals: July 16, 2014. . . . . . . . . . . . . . . . . . . . . . . TAB #3

iii

# INDEX OF AUTHORITIES

**CASES**                                                   **PAGE FIRST CITED**

*Armstrong V. State*, 845 S.W. 2d 909 (Tex.Crim.App. 1993). . . . . . . . . . . . . . . . 18

*Burks v. United States*, 437 U.S. 1 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Byrd v. State*, 187 S.W. 3d 436 (Tex.Crim.App. 2005). . . . . . . . . . . . . . . . . . . . . 22

*Cameron v. Greenhill*, 582 S.W.2d 775 (Tex. 1979). . . . . . . . . . . . . . . . . . . . . . 10

*Ex parte Ellis*, 275 S.W. 3d 109 (Tex.App.—Austin 2008, no pet). . . . . . . . . . . . 11

*Ford v. GTE Market Res., Inc.*, 1997 WL 644897
   (Tex.App-Dallas 1997, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Forman v. United States*, 361 U.S. 416 (1960). . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fuelberg v. State*, 410 S.W.3d 498 (Tex.App.—Austin 2013). . . . . . . . . . . . . . . . 5

*Fuelberg v. State*, 2014 WL 108321 (Tex. App.—Austin 2014). . . . . . . . . . . . . . . 6

*Fuelberg v. State*, __S.W.3d __(Tex.App.—Austin 2014);
   2014 WL 3558761 (Tex.App.—Austin 2014). . . . . . . . . . . . . . . . . . . . . . . 6

*Grunewald v. United States*, 353 U.S. 391 (1957). . . . . . . . . . . . . . . . . . . . . . . 20

*Guidry v. State*, 9 S.W.3d 133 (Tex.Crim.App. 1999). . . . . . . . . . . . . . . . . . . . . 23

*King v. Sapp*, 2 S.W. 573 (Tex. 1886). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*King v. State*, 848 S.W.2d 142 (Tex.Crim.App. 1993). . . . . . . . . . . . . . . . . . . . . 18

*Krulewitch v. United States*, 336 U.S. 440 (1949). . . . . . . . . . . . . . . . . . . . . . . 19

*Mendez v. State*, 56 S.W. 3d 880 (Tex.App.—Austin 2001, pet. ref'd). . . . . . . . . 22

*New York Life Ins. Co. v. Sides*, 46 Tex.Civ.App. 246,
    101 S.W. 1163 (Austin 1907, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pahl v. Whitt*, 304 S.W.2d 250 (Tex.Civ.App.-El Paso 1957, no writ). . . . . . . . 11

*Sims v. State*, 99 S.W.3d 600 (Tex.Crim.App. 2003). . . . . . . . . . . . . . . . . . . . . 18

*Sovereign Camp, Woodmen of the World v. Hale*, 120 S.W. 539
    (Tex. Civ. App. 1909). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Speer v. State*, 890 S.W. 2d 87 (Tex.App.-Houston [1st Dist.] 1994,
    pet.ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Templeton v. Giddings*, 12 S.W. 851 (Tex. 1889). . . . . . . . . . . . . . . . . . . . . . . 11

*Thomason v. State*, 892 S.W.2d 8 (Tex.Crim.App. 1994). . . . . . . . . . . . . . . . . 18

*United States v. Mann*, 161 F.3d 840 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . 21

*Whitehead v. State*, 273 S.W.3d 285 (Tex.Crim.App. 2008). . . . . . . . . . . . . . . . 9

*Williams v. City Nat'l Bank of Quanah*, 27 S.W. 147
    (Tex.Civ.App.—Fort Worth 1894, no writ). . . . . . . . . . . . . . . . . . . . . . . 10

*Wong Sun v. United States*, 371 U.S. 471 (1963). . . . . . . . . . . . . . . . . . . . . . . . 19

**RULES & STATUTES**

Tex.R.App.Proc. 47.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex.R.App.Proc. 66.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex.R.App.Proc. 68.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NO. PD-1537-14

IN THE
COURT OF CRIMINAL APPEALS OF TEXAS

BENNIE FUELBERG,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

**TO THE COURT OF CRIMINAL APPEALS:**

COMES NOW Appellant, Bennie Fuelberg (Fuelberg), by and through his counsel on appeal only, David L. Botsford, and pursuant to Tex.R.App.Proc. 68.1, presents this Petition for Discretionary Review, and would show this Honorable Court the following:

**Statement Regarding Oral Argument**

Oral argument would be of significant assistance to this Court because of the legal and factual complexities of the grounds presented for review.

**Statement Of The Case**

In June 2009, Fuelberg, the former General Manager of Pedernales Electric Cooperative (PEC) from 1976 until February 2008, was indicted by the Blanco County grand jury for the first degree felony offenses of misapplication of fiduciary

1

property and theft from PEC, and the second degree felony offense of money laundering the proceeds of the misapplication and theft counts. The misapplication and theft counts alleged that the offenses had occurred between November 14, 1996 to March 13, 2007, while the money laundering count alleged that the offense had occurred between September 1, 2005 and March 13, 2007.

The State's theory was that Fuelberg, with the agreement of Walter Demond,[1] a partner in the Austin law firm of Clark Thomas & Winters (Clark Thomas), arranged for Demond to hire Curtis Fuelberg (Fuelberg's brother) and William Price (the son of a PEC board member), as consultants for Clark Thomas. Clark Thomas, in turn, paid Curtis Fuelberg and William Price with funds collected from PEC by Clark Thomas through a fraudulent billing scheme orchestrated by Demond and Fuelberg, without disclosure to or approval by the PEC Board of Directors.

Because PEC is a member-owned utility that provides electrical service to twenty-four counties in Central Texas, and all residents in the PEC's service area are required to join PEC in order to receive electric service, Fuelberg and Demond filed identical verified motions to disqualify and recuse the Honorable Dan Mills, a PEC member-owner who was to preside over both indictments. An initial hearing was held before Judge Mills on September 4, 2009. Judge Mills addressed the motions, made

---

[1] The Blanco County grand jury also indicted Demond in a separate indictment alleging the same three identical offenses as those alleged against Fuelberg.

2

certain admissions and factual representations regarding his membership-ownership interest in PEC, but declined to voluntarily disqualify or recuse himself and referred the motions to the presiding judge of the administrative region, who assigned them to the Honorable Bert Richardson.

Judge Richardson held an evidentiary hearing in November 2009 on the verified motions to disqualify/recuse Judge Mills, and subsequently entered an order denying them. Fuelberg and Demond filed motions for leave to file mandamus with the Third Court of Appeals, which were denied in an unpublished opinion. *In re Demond*, No. 03-10-00024-CV (Tex.App.–Feb. 19, 2010) and *In re Fuelberg*, No. 03-10-00027-CV (Tex.App.–Austin Feb. 19, 2010). Fuelberg then filed a motion for leave to file mandamus with this Court, which was denied without written order on March 31, 2010. *In re Fuelberg*, No. WR-73,621-01 (Tex.Crim.App. 2010).

The State subsequently elected to put Fuelberg to trial prior to Demond. Judge Mills presided over both trials.[2]

During the first day of testimony in Fuelberg's trial, Judge Mills sustained Fuelberg's hearsay objections to testimony from William Price regarding Walter Demond's out-of-court statements made in January 2008, finding them inadmissible

---

[2] Both trials were moved by Judge Mills from Blanco County after Fuelberg, Demond and the State agreed to a change of venue to a county of Judge Mills's choice outside of the geographical area where members of the potential jury pool would necessarily be PEC members/owners. Fuelberg was tried in Gillespie County and Demond was tried in Kendall County.

3

under Texas Rule of Evidence 801(e)(2)(E) because they were not made "during the course" of any unalleged conspiracy between Demond and Fuelberg inasmuch as the offenses had terminated, according to the indictment, on March 13, 2007.

On the last day of the State's case-in-chief, Judge Mills overruled Fuelberg's hearsay objections to testimony from Larry McNeil and David Duggins regarding Walter Demond's out-of-court statements in three separate time frames, all of which post-dated the March 13, 2007 termination date alleged in the indictment: (1) November/December 2007; (2) February 2008; and (3) December 2008. Judge Mills overruled Fuelberg's specific objections that they were inadmissible under Texas Rule of Evidence 801(e)(2)(E) as they were not made (1) "during the course" of any conspiracy (because they all occurred after any alleged conspiracy had terminated and/or been abandoned in March 2007); and (2) "in furtherance" of any conspiracy (because they were mere narrative declarations of past events and did not solicit McNeil or Duggins to do anything).

Primarily on the basis of the testimony of McNeil and Duggins, Fuelberg was convicted (albeit of lesser included offenses of misapplication and theft) and the jury assessed his punishment at ten years confinement and a $10,000 fine on each count, but recommended that the imposition of sentence be suspended as to the confinement only. Demond was also convicted, but the imposition of his sentence was also

4

suspended. Fuelberg and Demond separately appealed their convictions to the court of appeals.

## Statement Of The Procedural History

On August 27, 2013, the court of appeals issued its initial, published opinion. *See* **TAB #1**, *Fuelberg v. State*, 410 S.W.3d 498 (Tex.App.–Austin 2013). The court: (1) overruled a portion of Fuelberg's first point of error — that Judge Mills was disqualified from presiding over the trial under Article V, §11, of the Texas Constitution, and therefore his trial and conviction are void; but (2) abated the appeal and remanded it for a new hearing, with instructions to address whether, under the proper objective reasonable-person standard, Judge Mills (a) was disqualified as an injured party (part of Fuelberg's first point of error), or (b) should have been recused because his impartiality might reasonably be questioned (Fuelberg's second point of error). *See* **TAB #1** at 14, 17-18; *Fuelberg*, 410 S.W.3d at 510-511. The court did not address Fuelberg's other points of error.

Pursuant to the abatement and remand, an evidentiary hearing was held before Judge Richardson on November 4, 2013. Testimony was adduced and on December 9, 2013, Judge Richardson entered "Findings Of Fact & Conclusions Of Law" to the effect that Judge Mills was not disqualified and should not have been recused.

On January 7, 2014, the court of appeals issued an order reinstating the appeal

5

and requesting further briefing. *See* **TAB #2**, *Fuelberg v. State*, 2014 WL 108321 (Tex.App.–Austin 2014). Additional briefing was supplied by Fuelberg on March 7, 2014 and by the State on April 29, 2014.

On July 16, 2014, the court of appeals issued its second published opinion, overruling Fuelberg's remaining disqualification and recusal issues (first and second points of error), and also disposing of Fuelberg's previously unaddressed points of error. *See* **TAB #3,** *Fuelberg v. State*, __S.W.3d __ (Tex.App.–Austin 2014); 2014 WL 3558761 (Tex. App.–Austin 2014). Fuelberg's motion for rehearing, filed on July 31, 2014, was denied on November 14, 2014.

On November 20, 2014, this Court granted Fuelberg's motion for extension of time to file a PDR and established a deadline of January 14, 2015.

## Grounds For Review

**Ground For Review No. 1: The Court Of Appeals Erred By Holding That Judge Mills Was Not Disqualified.**

**Ground For Review No. 2: The Court Of Appeals Erred By Holding That Judge Richardson Did Not Abuse His Discretion By Finding That Judge Mills Was Not Subject To Recusal.**

**Ground For Review No. 3: The Court Of Appeals Erred By Holding That Judge Mills Did Not Abuse His Discretion By Overruling Fuelberg's Objections To The Admissibility Of Alleged Co-conspirator Statements That Were Not Made During The Course Of Or In Furtherance Of Any Conspiracy.**

## Reasons For Review

Fuelberg's first two grounds for review present important constitutional and statutory issues relating to disqualification and recusal. Fuelberg's third ground for review presents important issues relating to the proper interpretation of Rule 801(e)(2)(E) of the Texas Rules of Evidence. Review should be granted as to all three issues under Tex.R.App.Proc. 66.3 because the court of appeals has:

(1) issued an opinion that conflicts with decisions of other courts of appeals; and

(2) decided important questions of state law that have not been but should be settled by this Court;

(3) decided important questions of state law that conflict with prior decisions of this Court and the Supreme Court of the United States;

(4) misconstrued Rule 801(e)(2)(E) of the Texas Rules of Evidence; and

7

(5) so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision.

## Discussion Of Grounds For Review

### Ground For Review No. 1 And Ground For Review No. 2

In his first point of error, Fuelberg asserted that Judge Mills was disqualified under Article V, §11, of the Texas Constitution ("No judge shall sit in any case wherein he may be interested"), Rule 18b(1)(b) of the Texas Rules of Civil Procedure ("Disqualification. Judges shall disqualify themselves in all proceedings in which . . . they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy"), and Article 30.01 of the Code of Criminal Procedure ("no judge or justice of the peace shall sit in any case where he may be the party injured") because of his financial interest in PEC as a member-owner and his status as a victim of the offenses allegedly committed by Fuelberg,

In his second point of error, Fuelberg asserted that Judge Mills should have been recused under Texas Rule of Civil Procedure 18b(b)(1) ("A judge shall recuse himself in any proceeding in which . . . his impartiality might reasonably be questioned") because, given his financial interest in PEC as a member-owner and his status as a victim of the offenses allegedly committed by Fuelberg, his "impartiality might reasonably be questioned."

8

In its initial opinion, the court of appeals addressed the first prong of Fuelberg's disqualification point — whether Judge Mills's pecuniary interest disqualified him under Article V, §11 of the Texas Constitution — and held that Judge Mills was not disqualified because his financial interest was too attenuated and contingent to mandate disqualification under Article V, §11. Slip op. at 7, 10-11.

Because Judge Richardson had failed to fully address the second prong of Fuelberg's disqualification issue — whether Judge Mills was disqualified as "a party injured" under Article 30.01 — and had utilized an improper standard in originally overruling Fuelberg's recusal issue, the court of appeals abated the appeal and remanded the case for a determination of:

> (1) Whether Judge Mills was disqualified under Article 30.01 of the Code of Criminal Procedure, as interpreted by *Whitehead v. State*, 273 S.W.3d 285 (Tex.Crim.App. 2008), as a victim of the alleged offenses and hence an injured or interested party to the offenses alleged in the indictment, **TAB #1** at 12-14, 18, *Fuelberg*, 410 S.W.3d at 507-508, 511); and

> (2) Whether Judge Mills should have been recused under Texas Rule of Civil Procedure 18b(b)(1) because his "impartiality might reasonably be questioned," **TAB #1** at 14-18, *Fuelberg*, 410 S.W.3d at 508-511, given his financial interest in PEC and his status as a potential "injured party" to the offenses alleged in the indictment.

After reinstating the appeal, the court of appeals' second opinion rejected both of these issues, holding that Judge Mills was not disqualified under Article 30.01 of the Code of Criminal Procedure as an "injured party," and that Judge Richardson did

9

not abuse his discretion in holding that Judge Mills should not have been recused under Texas Rule of Civil Procedure 18b(b)(1) because a reasonable person would not doubt his impartiality. **TAB #3** at 7-16.

> **a. Review Should Be Granted To Determine Whether Judge Mills's Pecuniary Interest Was Sufficient To Justify Disqualification Under Article V, §11 of the Texas Constitution.**

Resolution of the first prong of Fuelberg's disqualification issue — Article V, §11, of the Texas Constitution — was one of "first impression in this Court." **TAB #1** at 6, *Fuelberg*, 410 S.W.3d at 504. The court couched the issue as follows:

> Does a judge's participation in a member-owned utility cooperative disqualify him from hearing cases that might affect the cooperative financially? Under the facts of this case, we answer no. **TAB #1** at 6, *Fuelberg*, 410 S.W.3d at 504.

The court acknowledged the well "settled principle" that the interest which disqualifies a judge is that interest, however small, which rests upon a direct pecuniary or personal interest in the result of the case," citing *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex. 1979). **TAB #1** at 7, *Fuelberg*, 410 S.W.3d at 504. The court also acknowledged that if a judge has a direct financial interest in the outcome of the case, "such as stock ownership in a company who is a party to the case," the judge is disqualified, citing *Williams v. City Nat'l Bank of Quanah*, 27 S.W. 147, 148 (Tex. Civ. App.–Fort Worth 1894, no writ). *Id*. The court also noted Fuelberg's reliance on additional, well established case law that a judge who is a stockholder in

10

a corporation is disqualified under Article V, §11 of the Texas Constitution from sitting as a judge in a trial where that corporation is a party. *See Pahl v. Whitt*, 304 S.W.2d 250, 252 (Tex. Civ. App.–El Paso 1957, no writ), citing *Templeton v. Giddings*, 12 S.W. 851 (Tex. 1889) and *King v. Sapp*, 2 S.W. 573 (Tex. 1886). *See also Sovereign Camp, Woodmen of the World v. Hale*, 120 S.W. 539, 540 (Tex. Civ. App. 1909); *New York Life Ins. Co. v. Sides*, 46 Tex. Civ. App. 246,101 S.W. 1163 (Austin 1907, no writ). **TAB #1** at 9-10, *Fuelberg*, 410 S.W.3d at 505-506.

However, the court attempted to distinguish Fuelberg's citation of authority by equating Judge Mill's membership-ownership interest to that of a judge who is a customer of a public or regulated utility governed by Rule 18b(4)(E). *Id.*[3] *See also* **TAB #3** at 9 ("Judge Mills's only pecuniary interest in the PEC `is in the rates that he pays, or should have paid, for utility service, which is indistinguishable from the interest of a public utility customer.'" citing *Fuelberg*, 410 S.W.3d at 506, and Rule 18b(d)(4)(E)).

The court's attempt to distinguish these cases ignored the realization that Judge Mills's PEC membership-ownership interest constituted a traditional legal interest:

---

[3] The court thus engrafted the analysis applicable to disqualification under Rule 18b(4)(E) into the analysis applicable for disqualification under Article V, §11 of the Texas Constitution, while simultaneously failing to consider the analysis applicable to disqualification under Rule 18b(d)(4)("`financial interest' means ownership of a legal or equitable interest, however, small..."), which it had previously categorized as an automatic recusal provision in *Ex parte Ellis*, 275 S.W.3d 109, 116 n.2 (Tex. App.–Austin 2008, no pet.).

one sufficient to grant him standing in a class litigation as a PEC class-member.[4]

Judge Mills admitted to his ownership interest in PEC and equated it to owning five shares of stock of Ford Motor Company. The court acknowledged Judge Mill's ownership interest ("PEC members are technically owners" **TAB #1** at 10, *Fuelberg*, 410 S.W.3d at 506), but nevertheless maintains (in effect) that Judge Mills could properly preside over a trial where: (1) Ford Motor Company was the "victim" of the offense; and (2) restitution could be awarded to Ford Motor Company. This is clearly contrary to the cases relied upon by Fuelberg, cited above, and justifies discretionary review under Rule 66.3.

The court's failure to recognize and address the longstanding and clear distinction between Judge Mills's ownership interest and his corresponding *cognizable* legal interest as opposed to generalized grievances — those of general taxpayers and customers, including utility subscribers who have no legal stake in a business but still have concerns about what that business does, also justifies discretionary review.[5]  Indeed, it is well established that generalized concerns are

---

[4] It is undisputed that Judge Mills participated as a class-member of PEC shareholders in litigation related to this dispute. The interest that gave the judge standing to sue as a PEC member is the same interest that requires disqualification. The court made no effort to answer the simple question: if the judge was a proper member of a class in that case — even though general taxpayer and consumer interests would *not* justify standing — why is that interest suddenly *insufficient* to mandate disqualification and recusal in the present case?

[5] There is a clear difference in kind, not degree, between taxpayers with generalized interests and member-owners of PEC. Taxpayers are not entitled to participate in class litigation, but PEC

12

insufficient to create standing and insufficient to require disqualification and recusal. However, where the interest is *ownership*, the law imposes a bright-line rule to preserve the integrity of the judiciary. That bright-line rule was crossed in this case and the court's failure to recognize that also justifies discretionary review.

By equating Judge Mills's concrete interest with the non-cognizable interests of the general public, the court creates a dangerous precedent that also justifies discretionary review. There is a unifying theme when describing "a taxpayer or utility ratepayer" (*see* Rule 18b(d)(4)(E)) — *neither has any interest aside from generalized grievances*. So when the Legislature purported to exempt "similar interest[s]" (*ibid.*), it was only exempting other generalized grievances. That is entirely different from Judge Mills's cognizable interest in the present case.

Additionally, discretionary review is justified because the court's opinion will entangle the judiciary in endless disputes with no principled basis for resolving them, as it ignores that these disputes have been avoided for decades with the use of a traditional bright-line rule: "Once a pecuniary interest is shown to exist, the judge is disqualified no matter how slight the interest." *Ford v. GTE Market Res., Inc.*, 1997

---

member/owners are. Taxpayers do not have individual accounts set up where monetary awards from a proceeding may be deposited; PEC member/owners do. Taxpayers (and ratepayers) are not entitled to receive excess revenues from utility operations; PEC member-owners are. Tex. Util. Code § 161.059(d) (describing when "[t]he cooperative *shall* periodically return revenues" to its "members"). This is why stock ownership, for example, is categorically disqualifying — even where the judge owns but a few shares constituting an imperceptible fraction of corporate ownership. *Sovereign Camp, Woodmen of the World v. Hale*, 120 S.W. at 540.

13

WL 644897, at *1 (Tex.App.–Dallas 1997, pet. denied); *see also Cameron v. Greenhill*, 582 S.W.2d at 776; *Pahl*, 304 S.W.2d at 252.

### b. Review Should Be Granted To Determine Whether Judge Mills Was A "Party Injured" Under Article 30.01 And Hence Subject To Disqualification And/Or Recusal.

In its second opinion, the court held that Judge Mills was not a "party injured" under Article 30.01 of the Code of Criminal Procedure and thus, he was not disqualified, and that Judge Richardson did not abuse his discretion in denying recusal. **TAB** #3 at 7-16, *Fuelberg*, 2014 WL 3558761 at *3-*8.

The court failed to address and/or discounted the uncontested facts Fuelberg relied upon for his assertion that under Article 30.01 of the Code of Criminal Procedure, as interpreted by *Whitehead v. State*, 273 S.W.3d 285 (Tex.Crim.App.2008),[6] Judge Mills was subject to disqualification as an injured party and/or subject to recusal because a reasonable person might doubt his impartiality.

The court ignored Judge Mills's admission, at status hearing on March 12, 2010, that every prospective juror in Blanco County is a potential victim by virtue of

---

[6] It is not necessary that the judge actually be named in the indictment to be a party injured. *Whitehead v. State*, 273 S.W.3d 285 (Tex.Crim.App.2008). The judge is disqualified under article 30.01, "[i]f the evidence shows that he was among the defendant's victims in the criminal transaction or episode at issue such that a reasonable person would harbor doubt as to his impartiality." *Id*. at 289. "Certainly, a trial court judge who was a victim of the defendant might be biased against him or at least appear to be so, and allowing such a judge to preside over the defendant's trial would threaten the fair administration of justice and bring disrepute upon the judiciary." *Id*. at 288.

14

being a member-owner of PEC.

The court also ignored the punishment stage evidence adduced by the State concerning the "victim impact" of Fuelberg's crimes on the members of PEC (stressing that there was tremendous damage to the "trust" of the membership of PEC, pointing out that the dollar amount could not be ascertained and that the "issues in this lawsuit were part of the shareholder lawsuit").

The court discounted the public opinion poll — introduced at the remand hearing via an expert witness — that reflected that over 70% of respondents said it would be reasonable to have concerns about a judge being fair and unbiased in a materially indistinguishable fact pattern. Because the survey used the word "concerns" as opposed to "doubts," the court held that Judge Richardson could properly discount it. Such sophistry ignores the uncontroverted entirety of the public opinion poll.

The court also gave no weight to Fuelberg's argument that the State's closing comments at guilt/innocence constituted an admission that Judge Mills was in essence one of the "victims" of the misapplication and theft from PEC:

> Bennie is the general manager. "Your signature indicates that you have taken steps to ensure the invoices accurately reflect goods and services received by the Cooperative and necessary to be met **its obligation to the membership**." **Not to the Board of Directors, not to the general manager, to the membership. And who is the membership? The membership is the farmer in Blanco County, the storekeeper in**

15

**Marble Falls,the homeowner in suburban Austin. This is a gigantic area. That's whose money he's taking. Rural, suburban people, urban people. He's stealing from everybody**.

Finally, the court also discounted Judge Mills's involvment in the PEC shareholder lawsuit on the basis that his pecuniary interest was "indistinguishable from the interest of a public utility customer." **TAB #3** at 15-16, *Fuelberg*, 2014 WL 3558761 at *8.

The court thus ignored or discounted the key facts bearing on the critical issue: would a reasonable person doubt Judge Mills's impartiality knowing the following facts?

(1) Fuelberg was accused of misapplying and stealing over $200,000 from PEC;

(2) Member-owners of PEC are harmed by the misapplication and/or theft of the PEC's funds.

(3) Judge Mills was a member-owner of PEC during the time period Fuelberg allegedly misapplied and stole PEC funds.

(4) Judge Mills was a member of a group that sued Fuelberg civilly for alleged acts of misconduct while Fuelberg was the general manager of PEC, some of which acts were included in Fuelberg's criminal case.

(5) Judge Mills would have to decide the amount of any restitution ordered if Fuelberg was convicted, which restitution would benefit his capitol account at PEC which then totalled approximately $1,200.

Common sense suggests that a reasonable person would indeed doubt Judge Mills's ability to be fair or impartial under these circumstances. Because a reasonable

16

doubt is resolved in favor of recusal, *Ex parte Ellis*, 275 S.W.3d at 135, discretionary review should be granted.

**Ground For Review No. 3**

Fuelberg's Point Of Error Nos. 3 to 6 asserted that Judge Mills abused his discretion by overruling his objections to the testimony of Larry McNeil and David Duggins containing Walter Demond's out-of-court statements. Fuelberg asserted that, contrary to the State's argument, they were not co-conspirator statements under Texas Rule of Evidence 801(e)(2)(E) because they were not made "during the course" of and "in furtherance" of any conspiracy between Demond and Fuelberg. Fuelberg argued that they were:

> (1) not "during the course" of any conspiracy because they all occurred after any alleged conspiracy had terminated and/or been abandoned in March 2007, the ending date of the offenses alleged in the indictment;[7] and
>
> (2) not "in furtherance" of any conspiracy because they were mere narrative declarations of past events and did not solicit McNeil or Duggins to do anything.

The court of appeals' second opinion rejected this point of error, concluding that "the trial court could have reasonably concluded that Demond's statements to Duggins and McNeil were in the course of and in furtherance." **TAB #3** at 19,

---

[7] The date of March 14, 2007, was the date of the last payment by Clark Thomas to William Price and Curtis Fuelberg with funds Clark Thomas had obtained from PEC pursuant to the alleged false billing scheme.

17

*Fuelberg*, 2014 WL 3558761 at \*9-\*10.

Discretionary review should be granted because the court failed to acknowledge, address or distinguish facts, arguments and authorities contained in Fuelberg's brief, thereby violating the letter and spirit of Tex.R.App.Proc. 47.1.[8]

Critically, the court failed to address Fuelberg's argument that the State and Judge Mills had taken inconsistent positions regarding co-conspirator statements during the trial and that these inconsistent positions reflected Judge Mills' abuse of discretion. Fuelberg pointed out that the State took the position **on the first day of trial** that the conspiracy did not terminate in **March 2007**, but extended until **January 2008**. Judge Mills, expressing difficulty in understanding how any conspiracy could have continued past the termination of the objective of the

---

[8] Rule 47.1 states that "[t]he court of appeals must hand down a written opinion ... that addresses every issue raised and necessary to disposition of the appeal." This Court has interpreted Rule 47.1 to mean that:

> "...reviewing courts ought to mention a party's number one argument and explain why it does not have the persuasive force the party thinks it does....This practice maintains the integrity of the system and improves appellate practice....In this way, Rule 47.1 suggests that the courts of appeals should "show their work," much as we had to when learning long division in elementary school...."

*Sims v. State*, 99 S.W.3d 600, 603-604 (Tex.Crim.App. 2003). This rule also requires the court of appeals to address every issue raised, *Armstrong v. State*, 845 S.W.2d 909, 910 (Tex.Crim.App. 1993), to consider all relevant evidence impacting the losing party's claim, *King v. State*, 848 S.W.2d 142, 143 (Tex.Crim.App. 1993), and to distinguish the primary authority relied on by the losing party. *Thomason v. State*, 892 S.W.2d 8, 10 n. 4 (Tex.Crim.App. 1994).

18

conspiracy in March 2007, excluded that proposed testimony.[9] Subsequently, the State took the position on the **last day of its case-in-chief** that the conspiracy did not terminate until **December 15, 2008**. Judge Mills twice warned the State that it could be creating reversible error, but nevertheless allowed the admission of Demond's out-of-court statements through McNeil and Duggins in three separate time frames: (1) November/December 2007; (2) February 2008; and (3) December 2008. The court of appeals decided this issue without discussing cases Fuelberg cited from this Court and the Supreme Court, all of which support Fuelberg's position that the statements were not made during the course of the conspiracy because there was no subsidiary agreement to conceal.[10]

---

[9] This related to the State's effort to introduce Demond's January 2008 out-of-court statements to William Price. Judge Mills sustained Fuelberg's objections.

[10] Fuelberg argued that the Texas Rules of Evidence, and specifically the co-conspirator hearsay exemption, mirror the Federal Rules of Evidence. In the advisory committee's notes to Federal Rule of Evidence 801(d)(2)(E), the drafters stated their intent that the exemption be "consistent with the position of the Supreme Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved." Fed. R. Evid. 801(d)(2)(E) advisory committee's note (citing *Wong Sun v. United States*, 371 U.S. 471 (1963); *Krulewitch v. United States*, 336 U.S. 440 (1949)).

Fuelberg relied on *Krulewitch*, in which the Supreme Court rejected the government's argument that statements made after the main objective of the conspiracy had been achieved were nonetheless admissible **if made to conceal the crime**. *See Krulewitch* 336 U.S. at 442-443. The Supreme Court later explained and reaffirmed its holding in *Krulewitch*, stating:

> The crucial teaching of *Krulewitch* is that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be

Discretionary review should also be granted because the court also misconstrued authorities cited in its opinion. The court relied upon *Forman v. United States*, 361 U.S. 416, 423-24 (1960), overruled in part on other grounds, *Burks v. United States*, 437 U.S. 1, 17-18 (1978), *see* **TAB #3** at 18. However, reliance on *Forman* is inappropriate because there, unlike the present case, the indictment alleged a continuing conspiracy from 1942 to 1953 to evade the income taxes of Seijas and his wife for the years 1942 to 1945 and the continuing concealment of their "holdout" income until 1953 as alleged by overt acts in the indictment. Thus, an express conspiracy to conceal was alleged in the indictment, and there was no issue as to whether a subsidiary conspiracy to conceal the main conspiracy could be implied from circumstantial evidence. *Forman* does not support the proposition that an implied conspiracy to conceal can be discerned from the evidence presented in

> inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret: a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators.

*Grunewald v. United States*, 353 U.S. 391, 401-02 (1957). Review should be granted because the court completely ignored *Grunewald* and Fuelberg's arguments in reliance upon it.

20

Fuelberg's case, and indeed, there was absolutely no evidence of any agreement between Demond and Fuelberg to conceal anything once the last payment was made to Curtis Fuelberg and William Price in March 2007.

The court's reliance on *United States v. Mann*, 161 F.3d 840, 857 (5th Cir. 1998), *see* **TAB #3** at 18-19, is also misplaced. *Mann* dealt with the statute of limitations, and specifically relied upon *Grunewald*, noting that "after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment." 161 F.3d at 858 (quoting *Grunewald*). *Mann* noted that "*Grunewald* recognized, however, that `a vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attainted.'" *Id*. at 859. In Fuelberg's case, the main objective of the indictment offenses was attained in March 2007 and there was no evidence of acts of concealment done after the central objective had been attained from which a subsidiary agreement to conceal could be implied. Indeed, unlike *Mann* and *Forman*, both of which involved indictments alleging continuing conspiracies to evade/defraud the IRS long after the main objectives had been obtained, Fuelberg's

indictment alleged schemes to misapply and steal that ended on March 13, 2007, and thus, the court has failed to note *Grunewald's* "vital distinction" and sanctioned the admissibility of purported individual acts of concealment done as much as twenty months after the central objectives were attained.

Importantly, the court *ignored* Fuelberg's assertion that Demond's statements to his law partners in the three distinct time frames were not "in furtherance" of any conspiracy **because they were mere narrative declarations of past events and did not solicit McNeil or Duggins to do anything**.[11]  The court's conclusion — albeit without any discussion of Fuelberg's assertion that Demond's statements to his law partners were not in "in furtherance" — also conflicts with this Court's opinion in *Byrd v. State*, 187 S.W.3d 436, 443 (Tex.Crim.App. 2005). *Byrd* held that Rule 801(e)(2)(E) was a very narrow hearsay exemption and that statements found `to further' the conspiracy were statements that set in motion transactions that were a integral part of the common objective of the conspiracy, whereas statements found not to further the conspiracy were statements that did not advance the objectives of

---

[11] Demond's out-of-court statements to McNeil and Duggins: (1) explained Fuelberg's alleged actions and statements in a way so that it would not raise suspicion among the other attorneys at Clark Thomas; (2) explained Price and Curtis Fuelberg's roles for PEC; and (3) claimed that Fuelberg had PEC Board approval for his actions. Essentially, Demond indicated that everything was normal with the PEC account and blame-shifted in claiming that Fuelberg had told him that he had PEC board approval (meaning that either there was PEC board approval or that Fuelberg lied). Such blame-shifting statements are unreliable and inadmissible under *Mendez v. State*, 56 S.W.3d 880 (Tex. App.–Austin 2001, pet. ref'd), cited by Fuelberg and not addressed by the court.

22

the conspiracy. Furthermore, the `in furtherance' requirement draws a distinction between future concealment and concealment once the conspiracy has terminated. *See Krulewitch v. United States*, 336 U.S.440 (1949); *Byrd*, 187 S.W.3d at 442-443 (quoting *Guidry v. State*, 9 S.W.3d 133, 147-48 (Tex.Crim.App. 1999)). A statement made during the pendency of a conspiracy "must also require or suggest action on the part of either party or any other person, [or] provide information `that [is] necessary' to act in any way in furtherance of the conspiracy." *Speer v. State*, 890 S.W.2d 87, 94 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd). Therefore, a statement cannot be `in furtherance' of a conspiracy if it does not advance the conspiracy. Although not discussed by the court in disposing of Fuelberg's "in furtherance" argument, Demond's statements to McNeil and Duggins did not advance the alleged conspiracy to misapply/steal money from PEC to pay Curtis Fuelberg or William Price. They were narrative declarations of what Demond claimed [Fuelberg] had told him about PEC board approval and how to bill PEC. Demond's statements to McNeil and Duggins in no way could be interpreted as Demond (let alone Fuelberg) trying to get others (McNeil or Duggins) to join or assist in the conspiracy (especially since any conspiracy had terminated and/or was abandoned eight to twenty months prior to Demond's statements to McNeil and Duggins). Demond's statements to McNeil and Duggins were statements made to his law partners about past actions regarding PEC,

23

not future actions, and it was uncontroverted that Demond did not ask McNeil or Duggins to take any action whatsoever.

Discretionary review is unquestionably warranted.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Fuelberg respectfully prays that this Court grant discretionary review of all three grounds for review and reverse the opinion of the court of appeals.

Respectfully submitted,

/s/ David L. Botsford
State Bar No. 02687950

## CERTIFICATE OF COMPLIANCE

I hereby certify that excluding the portions of this petition exempted by Tex.R.App.P. Rule 9.4(i)(1), this petition contains 4,495 words as calculated by Word Perfect 5.1, which I used to draft this petition.

/s/ David L. Botsford

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been emailed to Mr. Bill Davis, Assistant Solicitor General, on the day it was electronically filed with this Court, and that a copy was mailed to the State Prosecuting Attorney, P.O. Box 12405, Capital Station, Austin, Texas, 78711, on the day it was electronically filed with the Court.

/s/ David L. Botsford

24

**TAB #1**

**August 27, 2013 Opinion Of The Court Of Appeals**

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00317-CR

### Bennie Fuelberg, Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT
### NO. CR01015, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

---

## O P I N I O N

A jury found appellant Bennie Fuelberg guilty of misapplication of fiduciary property, theft, and money laundering. *See* Tex. Penal Code §§ 31.03, 32.45, 34.02. The jury assessed punishment at ten years' imprisonment for each offense, but recommended that the sentences be suspended and Fuelberg be placed on community supervision. In seven appellate issues, Fuelberg asserts that (1) the trial judge, the Honorable Daniel H. Mills, was disqualified from the case; (2) the assigned judge abused his discretion in failing to recuse Judge Mills; (3) the trial court abused its discretion in admitting testimony of two of the State's witnesses; and (4) the trial court erred in its determination of restitution. We will abate and remand this appeal.

## BACKGROUND

The Pedernales Electric Cooperative (PEC) is a member-owned utility that provides electrical service to twenty-four counties in Central Texas. *See* Tex. Util. Code §§ 161.001–.254

(describing formation and operation of utility cooperatives). Any resident in the PEC's service area is required to join the PEC in order to receive electric service, and as of 2008 the PEC had over 225,000 members. As a utility cooperative, the PEC operates on a non-profit basis, meaning that the rates, fees, and other charges paid by PEC members can be spent only on reasonable business expenses, and any excess revenue must be refunded to members. *See id.* § 161.059.

Fuelberg was the general manager of the PEC from 1976 until his retirement in February of 2008, and was given broad authority to oversee its day-to-day operations. The State alleged that between November 1996 and March 2007, Fuelberg conspired with Walter Demond to funnel over $200,000 in PEC funds through Demond's law firm to Fuelberg's brother and the son of a former PEC board member. The State charged Fuelberg and Demond with first-degree misapplication of fiduciary property and theft and second-degree money laundering. *See* Tex. Penal Code §§ 31.03, 32.45, 34.02.

Prior to trial, Fuelberg and Demond filed motions to disqualify or, alternatively, recuse Judge Mills from their respective cases. The motions asserted that as a PEC member, Judge Mills had a financial interest in the outcome of the trial and was a putative victim of the alleged offenses. Following a brief discussion with the parties, Judge Mills declined to voluntarily recuse himself and referred the motions to the presiding judge, who assigned the motions to the Honorable Bert Richardson. *See* Tex. R. Civ. P. 18a (prescribing procedure for resolving motions to disqualify and recuse).[1] Judge Richardson conducted a hearing after which he denied Fuelberg's

---

[1] Although Fuelberg and Demond were tried separately, they filed identical motions to disqualify and recuse Judge Mills, and Judge Richardson conducted a single hearing for both Fuelberg's and Demond's motions.

2

and Demond's motions. Fuelberg and Demond filed petitions for writ of mandamus, seeking orders from this Court directing Judge Richardson to reverse his rulings. This Court denied the mandamus petitions. *See In re Fuelberg*, No. 03-10-00027-CV, 2010 Tex. App. LEXIS 1256, at *2–4 (Tex. App.—Austin Feb. 19, 2010, orig. proceeding [leave denied]) (mem. op.).

After a nine-day trial, the jury found Fuelberg guilty of third-degree misapplication of fiduciary property, theft, and money-laundering, indicating that the value of the property misapplied, stolen, and laundered was between $20,000 and $100,000. *See* Tex. Penal Code §§ 31.03(e)(5), 32.45(c)(5), 34.02(e)(2). Following a punishment hearing, the jury assessed punishment at ten years' imprisonment for each offense, but recommended that the sentence be suspended and Fuelberg be placed on community supervision. The trial court rendered a judgment consistent with the jury's verdict, and also ordered Fuelberg to pay $126,000 in restitution. This appeal followed.

## DISCUSSION

Fuelberg raises seven issues on appeal, which we group into the following four complaints. First, Fuelberg asserts that Judge Mills was disqualified from presiding over his trial, and therefore his trial and conviction are void. Second, Fuelberg claims that Judge Richardson abused his discretion in failing to recuse Judge Mills from Fuelberg's trial. Third, Fuelberg argues that the trial court abused its discretion in admitting the testimony of two witnesses because their testimonies were hearsay and violated the confrontation clause. Finally, Fuelberg claims that the trial court erred in ordering restitution above the amount reflected in the jury's verdict. We will address Fuelberg's first two appellate issues in turn and need not reach his third and fourth issues, as explained below.

3

**Disqualification**

In his first issue on appeal, Fuelberg asserts that Judge Mills was disqualified from presiding over his trial. *See* Tex. Const. art. V, § 11. Specifically, Fuelberg claims that Judge Mills was disqualified because, as a PEC member, he (1) had a pecuniary interest in the subject matter in controversy and (2) had a personal interest in the case because he was putative victim of the alleged offenses. *See id.*; Tex. R. Civ. P. 18b(a)(1) (defining disqualifying financial interest);[2] Tex. Code Crim. Proc. art. 30.01 (defining "injured party" as disqualifying interest). According to Fuelberg, Judge Mills lacked authority to hear this case, and thus the underlying proceedings are void. *See Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 555 (Tex. 2006) (noting that if trial judge is disqualified, any orders or judgments issued by court are "void and without effect").

"Since Texas became a state in 1845, judicial disqualification has always been a matter of constitutional dimension." *Tesco Am., Inc.*, 221 S.W.3d at 551. The Texas Constitution provides that "[n]o judge shall sit in any case wherein the judge may be interested . . . ." Tex. Const. art. V, § 11. Rule 18b(a) of the Rules of Civil Procedure and article 30.01 of the Code of Criminal Procedure clarify when a judge is disqualified, but these statutes "*expound* rather than *expand* the Constitution." *Tesco Am., Inc.*, 221 S.W.3d at 553. Therefore, regardless of whether disqualification is discussed in terms of Rule 18b(a) or article 30.01, disqualification is a constitutional issue in this

---

[2] Although this is a criminal case, it is well established that the standards for disqualification and recusal of a trial judge provided for in the Rules of Civil Procedure are applicable in the criminal context "absent an explicit or implicit legislative intent indicating otherwise." *Gaal v. State*, 332 S.W.3d 448, 452–53 (Tex. Crim. App. 2011) (applying rule 18b of Rules of Civil Procedure to disqualification and recusal issue in criminal case) (internal quotations omitted). We cite to the current versions of the Rules of Civil Procedure for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

4

case. *See id.*; *see also* Kilgarlin & Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 602 (1986) (discussing "constitutional statutory provisions" that embody article V, section 11 of Texas Constitution).

A disqualified judge may perform a ministerial act, but "is prohibited from performing any and all acts that call for the exercise of judicial discretion." *Koll v. State*, 157 S.W.2d 377, 379 (Tex. Crim. App. 1941) (concluding disqualified judge's order transferring venue was void). Thus any discretionary orders or judgments by a disqualified judge are void. *See Whitehead v. State*, 273 S.W.3d 285, 289 (Tex. Crim. App. 2008) (noting that if trial judge is disqualified under article 30.01 of Code of Criminal Procedure, conviction is nullity). Therefore, if Judge Mills was disqualified from Fuelberg's trial, Fuelberg's judgment of conviction and all of Judge Mills's discretionary rulings would be void and this case would be remanded for new proceedings.

*Standard of review*

Whether a judge is disqualified is a question of law that we generally review de novo. However, the State asserts that this Court's prior mandamus opinion—in which we rejected Fuelberg's disqualification and recusal issues—is the law of the case. *See In re Fuelberg*, 2010 Tex. App. LEXIS 1256, at *2–4; *see also Texas Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 338 (Tex. App.—Austin 2007, pet. denied) (explaining law-of-the-case doctrine). "Under the law-of-the-case doctrine, a court of appeals is ordinarily bound by its initial decision on a question of law if there is a subsequent appeal in the same case." *Dearing*, 240 S.W.3d at 348. If a prior legal conclusion is the law of the case, that conclusion will not be disturbed unless it was "clearly erroneous." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003).

5

The law-of-the-case doctrine is prudential rather than statutory, and the decision to revisit a previous holding is generally left to the discretion of the court under the particular circumstances of a given case. *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006). When a court denies mandamus without any comment on the merits, the mandamus is not the law of the case. *Perry Homes v. Cull*, 258 S.W.3d 580, 586 (Tex. 2008). Some courts have held that the law-of-the-case doctrine may apply when the court's denial of mandamus addresses the merits. *See, e.g., In re B.G.D.*, 351 S.W.3d 131, 141 (Tex. App.—Fort Worth 2011, no pet.). This Court has never extended the doctrine to a mandamus ruling. Without foreclosing the possibility of our doing so in the future, for purposes of this appeal we will not treat our previous denial of mandamus as law of the case, and we will address the disqualification issue de novo.

*Pecuniary interest*

Fuelberg asserts that Judge Mills was disqualified from this case, in part, because he had a pecuniary interest in the subject-matter in controversy. *See* Tex. R. Civ. P. 18b(a)(2). Specifically, Fuelberg claims that as a PEC Member, Judge Mills stood to potentially gain from any restitution he ordered. This issue was the primary focus of Fuelberg's disqualification motion, Judge Richardson's findings of fact and conclusions of law, and our opinion denying mandamus. *See In re Fuelberg*, 2010 Tex. App. LEXIS 1256, at *2–4. Furthermore, it presents an issue of first impression in this Court: Does a judge's participation in a member-owned utility cooperative disqualify him from hearing cases that might affect the cooperative financially? Under the facts of this case, we answer no.

6

"It is a settled principle of law that the interest which disqualifies a judge is that interest, however small, which rests upon a direct pecuniary or personal interest in the result of the case." *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex. 1979). Thus, if a judge has a direct financial interest in the outcome of the case, such as stock ownership in a company who is a party to litigation, the judge is disqualified. *See Williams v. City Nat'l Bank of Quanah*, 27 S.W. 147, 148 (Tex. Civ. App.—Fort Worth 1894, no writ) (concluding that ten shares in bank that was party to suit disqualified trial judge).

However, a judge's interest which is "merely indirect, incidental, remote, contingent, or possible" or based on his status as "a resident or taxpayer" in which he "will be no more affected by any decision which may be made in the case than every other citizen of the county who is a taxpayer" is not disqualifying. *Elliot v. Scott*, 25 S.W.2d 150, 152 (Tex. 1930). For this reason, a judge is not disqualified from hearing a case that may affect a public utility or regulated utility of which he is a customer. *See* Tex. R. Civ. P. 18b(d)(4)(E) ("[A]n interest as a taxpayer or utility ratepayer, *or any similar interest*, is not a 'financial interest' unless the outcome of the proceeding could substantially affect the liability of the judge . . . more than other judges.") (emphasis added); *Hidalgo Cnty. Water Imp. Dist. No. 2 v. Blalock*, 301 S.W.2d 593, 596 (Tex. 1957); *City of Houston v. Houston Lighting & Power Co.*, 530 S.W.2d 866, 868 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). Thus, it is the nature of the judge's financial interest, rather than its potential value, that determines whether the interest is disqualifying.[3]

---

[3] To the extent our prior mandamus opinion could be read to conclude that Judge Mills's financial interest was not disqualifying because it was de minimis, that conclusion would be incorrect. *See In re Fuelberg*, No. 03-10-00027-CV, 2010 Tex. App. LEXIS 1256, at *2–4 (Tex. App.—Austin Feb. 19, 2010, orig. proceeding [leave denied]) (mem. op.).

7

By statute, an electric cooperative like the PEC "shall operate *without profit* to its members." *See* Tex. Util. Code § 161.059(a) (emphasis added). The "rates, fees, rents, and other charges" for a co-op's services must be used to first pay for prudent business expenses, including the repayment of loans, and then to create reserves. *Id.* § 161.059(b)–(c). A utility cooperative "must periodically *return revenues* not required for those purposes to its members in proportion to that amount of business done with each member"—in the form of a cash payment, abatement of charges, or a general rate reduction—effectively reimbursing members for charges that they should not have paid. *See id.* § 161.059(d) (emphasis added).

This statutory framework is consistent with the testimony of the PEC's Chief Financial Officer, Michael Vollmer, at the disqualification and recusal hearing concerning how the PEC calculates reimbursements to its members. Vollmer explained that excess funds, which he called "margins," are calculated annually and then allocated to each member's "capital credit account" based on the "relative amount of electricity that [the member] purchased during the previous year." From there, the PEC board of directors can "distribute" portions of each member's capital credit account to the member. Vollmer emphasized that margins should not be called profits and distributions should not be called dividends, indicating that they are distinguishable, at least from an accounting standpoint.

At the time of the recusal hearing, Judge Mills had approximately $1,200 in his PEC capital credit account. Judge Mills did not receive a distribution from this account until 2007—27 years after he first became a PEC member—and that distribution was for approximately $18. Vollmer's testimony indicated that the PEC would be making more distributions in the near future.

8

Furthermore, Vollmer testified that any restitution that was ordered in this case could increase the PEC's margin, thereby increasing the amount allocated to each member's capital credit account for that year, which in turn could lead to a larger distribution in the future.

Fuelberg asserts that the potential distribution that Judge Mills could receive from ordering restitution is a direct, disqualifying pecuniary interest. Fuelberg relies primarily on *Pahl v. Whitt*, 304 S.W.2d 250, 252 (Tex. Civ. App.—El Paso 1957, no writ), which appears to be the only Texas case that directly addresses whether a judge's membership in a utility cooperative is disqualifying. The court in *Pahl* concluded that the interest was disqualifying because "if a Cooperative makes money, its members may receive dividends in the form of money or lowered rates for electricity, thus such members are in very much the same situation as stockholders in a corporation." *Id.* To the extent *Pahl* can be read to mean that distributions by all utility cooperatives are like dividends from a private corporation, we respectfully disagree. *See* 304 S.W.2d at 252. Each case must be reviewed on its own facts with regard to the character of the cooperative's distributions to its members.

Given the statutory framework and real-world application at PEC, as outlined above, the PEC's distributions to its members—whether in the form of cash distributions or reductions in future rates—function as a refund to members for previous overcharges. PEC members' capital credit accounts operate as an accounting tool to keep track of these overcharges and in no way equate to an ownership interest in the PEC. Therefore, the distributions from the capital credit accounts are more akin to a tax rebate or rate reduction than a dividend paid based on a company's profits. This interpretation is consistent with section 161.059(a) of the Utility Code, which specifically requires

9

that an electric cooperative must operate "without profit to its members." Given that Judge Mills automatically became a member of the PEC when he purchased his home and electrical service, his interest in obtaining lower electricity rates from the PEC in these ways is indistinguishable from that of a judge who is a customer of a public or regulated utility.[4] *See* Tex. R. Civ. P. 18b(d)(4)(E); *Hidalgo Cnty.*, 301 S.W.2d at 596; *City of Houston*, 530 S.W.2d at 868.

The record indicates that Judge Mills has no other financial interest in the PEC. Although PEC members are technically owners, their ownership is nontransferable—even to subsequent property owners—and terminates upon their withdrawal or death. Vollmer testified that if the PEC dissolved, members could be entitled to the amounts in their capital credit accounts, but there is no indication that they would be entitled to any other distribution. Therefore, the only financial interest that Judge Mills has in the PEC is in the rates that he pays, or should have paid, for utility service, which is indistinguishable from the interest of a public utility customer. *See* Tex. R. Civ. P. 18b(d)(4)(E).

Finally, as the State correctly notes, this is a criminal proceeding, and neither the PEC nor its members are actually parties to this case. Therefore, Judge Mills's potential financial interest

---

[4] Fuelberg also asserts that Judge Mills's interest in the PEC is equivalent to that of a policyholder of a mutual insurance company, which has been held to be disqualifying. *See Sovereign Camp v. Hale*, 120 S.W.539, 540 (Tex. 1909); *New York Life Ins. Co. v. Sides*, 46 Tex. Civ. App. 246, 247 (Tex. 1907). However, the judges in *Hale* and *Sides* had a pecuniary interest in those cases not because they technically owned a portion of the insurance company, but because any financial harm to the insurance company would have endangered the pay-outs of their individual life insurance policies. *See Sovereign Camp*, 120 S.W. at 540; *New York Life Ins. Co.*, 46 Tex. Civ. App. at 247; *see also* Tex. R. Civ. P. 18b(d)(4)(C) ("[T]he proprietary interest of a policyholder in a mutual insurance company . . . is a 'financial interest' in the organization only if the outcome of the proceeding could substantially affect the value of the interest."). Thus, the judges' pecuniary interest in the mutual insurance cases are distinguishable from Judge Mills's interest in this case because Judge Mills does not have a distinct future payout that could be endangered by his decision.

is even more attenuated than it would be in a civil case because he stood to gain only if Fuelberg was convicted; Judge Mills, in his discretion, ordered Fuelberg to pay restitution; the PEC increased the allocations to its members' capital credit accounts based on that restitution; and then the PEC Board, in its discretion, approved a distribution to its members from the increase in their capital credit accounts. We have not found any Texas cases that address whether a trial judge's potential benefit from criminal restitution can be disqualifying, and the federal cases on the issue are split.[5] *See United States v. Rogers*, 119 F.3d 1377, 1383 (9th Cir. 1997) (noting circuit split).

Furthermore, those federal courts which have found that this type of interest can be disqualifying noted that only a judge with a "substantial interest" in the corporate victim of the crime should disqualify himself. *See United States v. Nobel*, 696 F.2d 231, 234–35 (3d Cir. 1982). The court in *Nobel* explained that a judge who owned stock in the "corporate victim of the crimes does not have a 'financial interest in the subject matter in controversy,'" but for sake of appearance may nonetheless be required to be disqualified. *See id.* Given that the Texas rules governing financial interests do not require disqualification for the sake of appearances, the federal court's reasoning in *Nobel* appears to be more in line with Texas's recusal standards, and thus has little if any applicability to disqualification under Texas law. *See supra* n.5. In addition, although the court in *Nobel* did not define what "substantial interest" means, there is nothing in the record that could

---

[5] The federal rule for disqualification "includes disqualification for the appearance of impropriety," which is addressed in the Texas rules for recusal. *In re Wilhite*, 298 S.W.3d 754, 760–61 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding [mand. denied]). "Because federal cases discussing recusal and disqualification often use the terms interchangeably, those cases are of limited guidance in interpreting Texas's rule for disqualification that does not include the appearance of impropriety as a basis for disqualification." *Id.*

11

arguably support a claim that Judge Mills has a substantial financial interest in either the PEC or the outcome of this case. *See* 696 F.2d at 234–35 (concluding that judge's impartiality might reasonably be questioned when he owned between $10,000 and $15,000 in victim's corporate stock).

Therefore, we conclude that Judge Mills did not have a disqualifying pecuniary interest in the subject matter of this case. Judge Richardson did not err in denying Fuelberg's motion to disqualify Judge Mills on this basis. We overrule Fuelberg's first appellate issue with respect to Judge Mills's pecuniary interest in this case.

*Injured Party*

Fuelberg also asserts that Judge Mills was disqualified from this case as a putative victim of the offenses alleged. Specifically, Fuelberg claims that as a PEC member, Judge Mills was a "party injured" within the meaning of article 30.01 of the Code of Criminal Procedure. Therefore, according to Fuelberg, Judge Mills has a disqualifying personal interest in the subject matter at issue.

Article 30.01 states that "[n]o judge or justice of the peace shall sit in any case where he may be the party injured . . . ." The statute does not define who qualifies as "the injured party" in a criminal case, although it would presumably always include the victim named in the indictment. *See Ex parte Ambrose*, 24 S.W. 291, 291–92 (Tex. Crim. App. 1893) (concluding that county judge was disqualified from presiding over trial for assault where he was victim of alleged assault); *but see Lane v. State*, 634 S.W.2d 65, 66 (Tex. App.—Fort Worth 1982, no pet.) (concluding that "judge presiding at a trial in which perjury is committed does not thereby become an 'injured party'" in subsequent perjury trial). In this case, however, the PEC—not the PEC members generally nor Judge Mills specifically—is the victim named in the indictment.

12

Whether the judge was named as the victim in the indictment, however, does not necessarily end the inquiry. The court of criminal appeals recently addressed a similar case in which the trial judge was not named in the indictment but was nonetheless involved in the underlying offense. *See Whitehead v. State*, 273 S.W.3d 285, 286 (Tex. Crim. App. 2008). In that case, the judge was one of the people threatened in a letter written by the defendant that formed the basis for the State's motion to revoke the defendant's community supervision. *Id.* The court of criminal appeals rejected the intermediate court's conclusion that the judge was not an injured party merely because he was not named in the indictment, and held that he "may be the party injured, . . . if the evidence shows that he was among the defendant's victims in the criminal transaction or episode at issue, such that a reasonable person would harbor doubts as to the judge's impartiality."[6] *Id.* at 289 (internal quotations omitted). The court further held that a reasonable person would harbor doubts about the judge's impartiality in that case, and therefore the judge was disqualified. *See id.*

Given that Judge Mills is not the victim named in the indictment, he is an injured party, if at all, because he was a victim in the criminal transaction or episode at issue such that a reasonable person would doubt his impartiality. *See id.* Judge Richardson did not make findings

---

[6] The defendant in *Whitehead v. State* did not file a motion to recuse the trial judge, and thus the court of criminal appeals considered only whether the trial judge was disqualified. *See* 273 S.W.3d 285, 289 (Tex. Crim. App. 2008). Given that the rationale and standard established in *Whitehead* are identical to the rationale and standard for recusal under rule 18b(b)(1) of the Rules of Civil Procedure, it is possible that the interest addressed in *Whitehead* could more aptly be resolved under recusal law. *See id.* ("We have no doubt that [the trial judge's] integrity is of the highest and that he would have recused himself had a motion for recusal been filed."). Nevertheless, the court determined that the interest was disqualifying under article 30.01 of the Code of Criminal Procedure, and we are bound to conform our opinions to those of the court of criminal appeals. *See State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006).

13

of fact or conclusions of law as to whether Judge Mills was an injured party within the meaning of article 30.01 or whether a reasonable person would doubt his impartiality.

As we will discuss below, we are abating this appeal and remanding this cause for a new hearing on the issue of whether Judge Mills should have been recused under rule 18b(b)(1) of the Rules of Civil Procedure. The objective reasonable-person standard for disqualification established in *Whitehead* is identical to the objective reasonable-person standard for recusal under rule 18b(b)(1). *Compare Whitehead*, 273 S.W.3d at 286, *with Ex parte Ellis*, 275 S.W.3d 109, 115–17 (Tex. App.—Austin 2008, no pet.) (describing objective reasonable-person standard for recusal under rule 18b(b)(1)). Therefore, we will also abate this appeal and remand this cause with instructions to determine whether Judge Mills is disqualified as an injured party under *Whitehead*. *See* 273 S.W.3d at 286; *see also Gamez v. State*, 644 S.W.2d 879, 880–81 (Tex. App.—San Antonio 1982, pet. ref'd) (abating case and remanding for factual determination of whether trial judge was disqualified under article 30.01).

**Recusal**

In his second issue on appeal, Fuelberg asserts that Judge Richardson erred in denying his motion to recuse Judge Mills. Specifically, Fuelberg argues that Judge Mills should have been recused because, given his financial interest in the PEC and his status as a victim of the offenses alleged, his "impartiality might reasonably be questioned."[7] *See* Tex. R. Civ. P. 18b(b)(1). Although

---

[7] Fuelberg also asserts that Judge Mills should have been recused because he had "a financial interest in the subject matter in controversy." *See* Tex. R. Civ. P. 18b(b)(6). However, Fuelberg did not raise this argument in his amended motion to recuse Judge Mills, nor did he assert it as a separate ground for recusal at the hearing before Judge Richardson. Therefore, Fuelberg has not preserved this issue for appeal. *See Blackwell v. Humble*, 241 S.W.3d 707, 713 (Tex. App.—Austin 2007,

these complaints mirror the arguments for disqualification discussed above, recusal is concerned not only with actual personal or pecuniary interests, but also the appearance of impartiality when all factors are reviewed as a whole. *See id.*; *Rogers v. Bradley*, 909 S.W.2d 872, 873 (Tex. 1995) ("Declaration of Recusal" by Gammage, J.) (noting that issue is one of perception). "[B]eyond the demand that a judge be impartial is the requirement that judge appear to be impartial so that no doubts or suspicions exist as to the fairness or integrity of the court." *Sears v. Olivarez*, 28 S.W.3d 611, 613–14 (Tex. App.—Corpus Christi 2000, no pet.). Thus, according to Fuelberg, even if Judge Mills's alleged interests in this case do not rise to the level of constitutional disqualification, those interests nevertheless cause his impartiality to be reasonably questioned.

In determining whether recusal is required, "the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial." *Ex parte Ellis*, 275 S.W.3d at 115–17 (internal quotations omitted). Thus, unlike the subjective issue of whether Judge Mills has a personal or pecuniary interest in this case, recusal is determined from an objective standard, and asks whether a reasonable person would doubt that Judge Mills could remain impartial. *Id.* As discussed above, we will not treat our previous mandamus opinion as law of the case with respect to recusal. Therefore, we review Judge Richardson's ruling on Fuelberg's recusal motion for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 120 (Tex. Crim. App. 2000).

Judge Richardson issued an order denying Fuelberg's disqualification and recusal motions, in which he adopted the findings of fact and conclusions of law he previously announced

_____

no pet.) (noting that party who fails to timely raise grounds for recusal waives right to complain about judge's failure to recuse).

15

during the disqualification and recusal hearing. At the hearing, Judge Richardson mostly focused on the motion to disqualify and made only the following findings of fact and conclusions of law with respect to recusal:

> The recusal issue is something completely different. They argue the recusal issue under the Code of Judicial Conduct and that Judge Mills could not be fair and impartial. And the only thing I have to rely on at this point is as to Cannon [sic] Four, which states the following: "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge or interfere with the proper performance of judicial duty." I haven't found any cases directly on point that deal with this issue, although the defense relies on *Whitt*,[8] and I'll comment on that in just a minute.
>
> Specifically, Judge Mills stated in court during the first hearing when the motion to recuse and disqualify was first brought to his attention that he could be fair and impartial, that he had no recollection of ever having received any kind of check from PEC, and didn't feel like he needed to step aside. And so the Court is relying on that representation to resolve the recusal issue, and that is that he can be. The defense chose not to call him, so that is the only thing that is reflected in the record as to whether or not he could be fair and impartial so I'll rely on his representation that he can be.

Judge Richardson also issued a supplemental order, in which wrote that "neither side chose to call Judge Mills as a witness. Therefore, the Court will rely upon the Judge's representations in the record vis-a-vis his ability to be fair and impartial." Judge Richardson noted that Judge Mills had received only one distribution for $18, and concluded "[t]hat amount hardly seems sufficient to

---

[8] The "*Whitt*" case Judge Richardson is referring to is *Pahl v. Whitt*, 304 S.W.2d 250, 252 (Tex. Civ. App.—El Paso 1957, no writ), the case discussed above concerning disqualification based on membership in an electric cooperative. Judge Richardson did not discuss *Whitt* in terms of recusal, and it appears that his brief reference to it during his discussion of recusal is not relevant.

16

create a bias that rises to the level of recusal or disqualification—especially in light of his statements to the contrary in the first hearing on the matter." These are Judge Richardson's only findings or comments with respect to Fuelberg's recusal motion.

At no point in his oral pronouncement, his original order, or his supplemental order did Judge Richardson reference the objective reasonable-person standard that applies to recusal. Judge Richardson's findings of fact and conclusions of law indicate that he applied a subjective standard to determine whether Judge Mills was in fact impartial, relying solely on Judge Mills's own subjective state of mind and beliefs concerning whether he could be fair and impartial. Instead, Judge Richardson should have determined whether a reasonable person would doubt Judge Mills's impartiality. Therefore, we conclude that Judge Richardson abused his discretion by applying the incorrect legal standard to Fuelberg's motion to recuse. *See State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007) (noting that trial court abuses discretion when misapplies the law).

Based upon this conclusion, we now must decide the appropriate remedy. One of our sister court of appeals recently addressed a similar case in which a recusal court abused its discretion by "misapplying or misinterpreting recusal law." *See Kniatt v. State*, 239 S.W.3d 910, 919–920 (Tex. App.—Waco 2007, no pet.) (op. on reh'g). In that case, the appellate court noted that it had "not determined that the assigned judge abused his discretion in denying [the defendant's] recusal motion under a correct application of recusal law." *Id.* at 920. Therefore, the appellate court concluded that it should abate the appeal and remand the case for a new recusal hearing so that the court below could apply the correct recusal standard. *Id.* at 922 (citing several cases from other courts of appeals abating appeal for new recusal hearing). The court took this action even though the trial court had already rendered a judgment of conviction.

17

We have determined that this procedural approach is appropriate in this case. The record does not clearly establish as a matter of law that Judge Mills should or should not have been recused. Furthermore, Judge Richardson has not considered or determined whether a reasonable person would doubt Judge Mills's impartiality. Therefore, we will abate this appeal and remand the case for a new recusal hearing with instructions to apply the correct reasonable-person standard. Because we are abating this appeal and remanding this case for a new recusal hearing, we need not reach Fuelberg's remaining issues at this time. *See* Tex. R. App. P. 47.1 (requiring appellate courts to hand down opinions that are as brief as possible while addressing those issues necessary to final disposition of appeal).

## CONCLUSION

We overrule Fuelberg's complaint that Judge Mills was disqualified based on his alleged pecuniary interest in the subject-matter of this case. We abate this appeal and remand this cause for a new hearing, with instructions to address whether, under an objective reasonable-person standard, Judge Mills (1) was disqualified as an interested party, *see Whitehead*, 273 S.W.3d at 286, or (2) should have been recused because his impartiality might reasonably be questioned, *see* Tex. R. Civ. P. 18b(b)(1).

The district court shall submit to this Court its findings and conclusions, along with a transcription of the hearing, in a supplemental clerk's record and reporter's record on or before October 28, 2013. At that time, we may request supplemental briefing from the parties as necessary.

18

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Abated

Filed:   August 27, 2013

Publish

**TAB #2**

**January 7, 2014 Order Of The Court Of Appeals**

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00317-CR

**Bennie Fuelberg, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT
### NO. CR01015, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## O R D E R

**PER CURIAM**

We abated this appeal and remanded this cause for a new hearing, with instructions to address whether, under an objective reasonable-person standard, the Honorable Judge Daniel H. Mills (1) was disqualified as an injured party from hearing this case or (2) should have been recused because his impartiality might reasonably be questioned. *See Fuelberg v. State*, 410 S.W.3d 498, 510–11 (Tex. App.—Austin 2013, no pet.). The district court has since filed a supplemental clerk's record with an order concluding that Judge Mills was not disqualified and should not have been recused. This appeal is reinstated.

We request supplemental briefings from the parties on the limited issue of whether the district court erred in concluding that Judge Mills should not have been disqualified or recused.

The appellant should file his brief no later than February 6, 2014. The State's response will be due within thirty (30) days of the filing of the appellant's brief.

It is so ordered this 7th day of January 2014.

Before Chief Justice Jones, Justices Pemberton and Field

Do Not Publish

**TAB #3**

July 16, 2014 Opinion Of The Court Of Appeals

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00317-CR

**Bennie Fuelberg, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT NO. CR01015, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## OPINION

A jury found appellant Bennie Fuelberg guilty of misapplication of fiduciary property, theft, and money laundering. *See* Tex. Penal Code §§ 31.03, 32.45, 34.02. The jury assessed punishment at ten years' imprisonment for each offense, but recommended that the sentences be suspended and Fuelberg be placed on community supervision. In seven appellate issues, Fuelberg asserts that (1) the trial judge, the Honorable Daniel H. Mills, was disqualified from the case; (2) the assigned judge abused his discretion in failing to recuse Judge Mills; (3) the trial court abused its discretion in admitting testimony of two of the State's witnesses; and (4) the trial court erred in its determination of restitution. We affirm the judgment of the trial court.

## BACKGROUND

The facts of this case are discussed in this Court's prior opinion in *Fuelberg v. State*, 410 S.W.3d 498, 501–02 (Tex. App.—Austin 2013, no pet.). We repeat only those facts that are relevant to our disposition of this appeal.

### Factual background

The Pedernales Electric Cooperative (PEC) is a member-owned utility that provides electrical service to twenty-four counties in Central Texas. *See* Tex. Util. Code §§ 161.001–.254 (describing formation and operation of utility cooperatives). Any resident in the PEC's service area is required to join the PEC in order to receive electric service, and as of 2008 the PEC had over 225,000 members. Fuelberg was the general manager of the PEC from 1976 until his retirement in February 2008, and he was given broad authority to oversee its day-to-day operations.

The State alleges that between November 1996 and March 2007, Fuelberg conspired with Walter Demond to funnel over $200,000 in PEC funds to Fuelberg's brother Curtis and William Price, the son of a former PEC board member.[1] Demond was a partner at Clark, Thomas & Winters, PC (Clark Thomas), a law firm that had represented the PEC for several decades. According to Larry McNeil, the president of Clark Thomas, Demond was the law firm's informal chief financial officer and head of the "energy group," which was the section of Clark Thomas that handled the PEC's representation. Fuelberg was Demond's primary contact at the PEC, and the PEC paid Clark Thomas an average of $900,000 per year for its legal services.

---

[1] We refer to Curtis Fuelberg by his first name to avoid confusion.

2

According to the State, Fuelberg instructed Demond to hire Curtis as a consulting lobbyist for Clark Thomas and then have Clark Thomas bill the PEC to pay Curtis's salary. The State introduced evidence that between October 1996 and December 2003, Clark Thomas billed the PEC $30,000 every six months to cover "the PEC's share" of Curtis's salary.[2] Similarly, the State alleged that beginning in 2003, Fuelberg instructed Demond to keep Price on retainer as counsel for Clark Thomas. The State introduced evidence that Clark Thomas paid Price $2,000 per month and then billed the PEC for most of those payments. Finally, the State introduced evidence that from January 2004 through March 2007, Demond billed the PEC $7,000 per month to cover both Price's retainer and Curtis's salary. All told, the state's forensic accountant testified that the PEC paid Clark Thomas $630,000 for Curtis's salary and $86,000 for Price's retainer.[3]

At trial, PEC board members testified that they never knew about or approved Fuelberg's payment of PEC funds to Curtis or Price. Price also testified that he did not know that his retainer was being paid with PEC's money. Finally, Curtis testified that he did not learn that his income from Clark Thomas was being paid with PEC funds until 2002 or 2003. The State also introduced evidence that when the PEC's Human Resources Director asked Clark Thomas to explain the $7,000 monthly payments, Fuelberg told Demond to ignore that request and send billing invoices directly to Fuelberg for approval.

---

[2] Clark Thomas initially paid Curtis $5,000 per month, but his salary ultimately increased to $7,000 per month. The PEC's $30,000 semiannual payment to Clark Thomas did not increase, and therefore the PEC was not reimbursing Clark Thomas for all of Curtis's salary.

[3] There is conflicting evidence about whether Curtis did any actual work as a lobbyist for the PEC. Price, however, testified that he never performed any work for the PEC or Clark Thomas despite asking Demond several times if there was any work that he could do.

3

David Duggins, another partner at Clark Thomas, testified that he spoke with Demond about their firm's payments to Curtis and Price in November or early December 2007. According to Duggins, Demond assured him that the PEC was not being billed for Curtis's or Price's work. Two months later, however, Duggins "heard a reference made to PEC's share of these payments," and he asked Demond "what is this about PEC's share?" Duggins testified that Demond showed him an invoice for the $7,000 per month that the PEC was paying to Clark Thomas, which Demond explained was for the PEC's share of Clark Thomas's payments to Curtis and Price. Demond told Duggins that Fuelberg instructed him to conduct this billing arrangement and that Fuelberg assured Demond that the PEC Board of Directors had approved the arrangement. However, when Duggins asked Demond for written proof of the PEC board's approval, Demond stated that he had none.

Fuelberg retired from the PEC in February 2008. One month later, the PEC's new general manager hired Navigant Consulting to investigate and prepare a report about the PEC's outside consulting expenditures during Fuelberg's tenure. Part of Navigant's investigation included PEC's payments to Clark Thomas. On December 15, 2008, Navigant issued its report (the Navigant Report), detailing Fuelberg and Demond's alleged scheme to transfer PEC funds to Curtis and Price through Clark Thomas.

A few days before the Navigant Report was issued, a PEC representative who was helping prepare the Navigant Report contacted Demond to discuss Clark Thomas's billing. According to the PEC representative, Demond did not provide an explanation for the $30,000 semiannual payments at the time—the same payments that were allegedly used to cover Curtis's lobbying salary as outlined above. Duggins testified that Demond called him to discuss the PEC's

4

investigation, explained the purpose of the $30,000 payments, and stated that he was not sure what to tell the PEC. Duggins told Demond that they needed to meet with McNeil to discuss the situation. Duggins and McNeil testified that at that meeting, Demond explained the full extent of Clark Thomas's payments to Curtis and Price and how the firm was billing the PEC for its share of these expenses.

**Procedural history**

Seven months after the Navigant Report was issued, Fuelberg and Demond were each indicted for first-degree felony misapplication of fiduciary property, first-degree felony theft, and second-degree felony money laundering. *See* Tex. Penal Code §§ 31.03(e)(7) (making theft a first-degree felony if value of property stolen was more than $200,000), 32.45(c)(7) (same punishment range for misapplication of fiduciary property), 34.02(e)(3) (making money laundering a second-degree felony if value of fund is more than $100,000 but less than $200,000). Prior to trial, Fuelberg and Demond filed motions to disqualify or, alternatively, recuse Judge Mills from their respective cases. The motions asserted that as a PEC member, Judge Mills had a personal and pecuniary interest in this case and that a reasonable person might question Judge Mills's impartiality. Judge Mills declined to voluntarily recuse himself and referred the motions to the presiding judge, who assigned the motions to the Honorable Bert Richardson. *See* Tex. R. Civ. P. 18a (prescribing procedure for resolving motions to disqualify and recuse). Judge Richardson conducted a hearing, after which he denied Fuelberg's and Demond's motions.

Fuelberg and Demond were tried separately, with Fuelberg's trial taking place three months before Demond's. In Fuelberg's trial, the State called a total of nineteen witnesses, including

5

Duggins and McNeil, who testified about their conversations with Demond outlined above. Fuelberg called a total of eight witnesses, including his brother Curtis, who testified about the work he performed for Clark Thomas. Finally, Fuelberg testified in his own defense, asserting that he had the authority to pay Curtis for consultant work and therefore there was nothing improper in his doing so through Clark Thomas. Fuelberg also stated that he did not know that Demond was charging the PEC for Price's retainer.

The jury found Fuelberg guilty of third-degree misapplication of fiduciary property, theft, and money-laundering, meaning that the value of the property misapplied, stolen, and laundered was between $20,000 and $100,000. *See* Tex. Penal Code §§ 31.03(e)(5), 32.45(c)(5), 34.02(e)(2). The jury assessed punishment at ten years' imprisonment for each offense, but recommended that the sentence be suspended and Fuelberg be placed on community supervision. The trial court rendered a judgment consistent with the jury's verdict and also ordered Fuelberg to pay $126,000 in restitution.[4] This appeal followed.

## DISCUSSION

Fuelberg raises seven issues on appeal, which we group into the following four categories. First, Fuelberg asserts that Judge Mills was disqualified from presiding over this case because (a) as a PEC member, he has a pecuniary interest in the subject matter of the case and (b) as a PEC member, he is a "party injured" within the meaning of article 30.01 of the Code of Criminal

---

[4] The trial court also ordered Fuelberg to serve a total of 300 days in the Blanco County Jail as a condition of his community supervision. *See* Tex. Code Crim. Proc. art. 42.12, § 12(a) (authorizing judge to require defendant on community supervision for a felony offense to submit to confinement in county jail as condition of community supervision).

6

Procedure. *See Fuelberg*, 410 S.W.3d at 503 (discussing Fuelberg's disqualification claims). Second, Fuelberg argues that Judge Richardson erred in denying Fuelberg's motion to recuse Judge Mills. Third, Fuelberg complains that Duggins's and McNeil's testimony about their conversations with Demond constituted hearsay and violated the Confrontation Clause. Fourth, Fuelberg claims that the trial court abused its discretion in ordering restitution higher than the amount reflected in the jury's verdict. We will address each issue separately.

**Disqualification and recusal**

In our prior opinion, we overruled Fuelberg's assertion that Judge Mills had a disqualifying pecuniary interest in this case. *See id.* at 504–07. However, we remanded the case to Judge Richardson to determine "whether, under an objective reasonable-person standard, Judge Mills (1) was disqualified as an interested party . . . or (2) should have been recused because his impartiality might reasonably be questioned." *Id.* at 511 (citing *Whitehead v. State*, 273 S.W.3d 285, 286 (Tex. Crim. App. 2008); Tex. R. Civ. P. 18b(b)(1)). On remand, Judge Richardson conducted a second disqualification and recusal hearing. Following that hearing, Judge Richardson again denied Fuelberg's motion to disqualify and recuse Judge Mills.

Fuelberg argues that Judge Mills was disqualified under article 30.01 of the Code of Criminal Procedure, which states that a judge is disqualified from sitting in "any case where he may be the party injured." As we discussed in our prior opinion, Judge Mills "is an injured party, if at all, because he was a victim in the criminal transaction or episode at issue such that a reasonable person would doubt his impartiality." *Id.* at 508 (citing *Whitehead*, 273 S.W.3d at 286). "The objective reasonable-person standard for disqualification" as an injured party is "identical to the

7

objective reasonable-person standard for recusal under rule 18b(b)(1)." *Id.* (comparing *Whitehead*, 273 S.W.3d at 286, *with Ex parte Ellis*, 275 S.W.3d 109, 115–17 (Tex. App.—Austin 2008, no pet.)). Therefore, in addressing either disqualification under article 30.01 of the Code of Criminal Procedure or recusal under section 18b(b)(1) of the Rules of Civil Procedure, the ultimate issue is the same—would "a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, . . . have a reasonable doubt that the judge is actually impartial[?]" *Ex parte Ellis*, 275 S.W.3d at 116 (internal quotations omitted).

This objective reasonable-person standard "is concerned not only with actual personal or pecuniary interests, but also the appearance of impartiality." *Fuelberg*, 410 S.W.3d at 509. "[B]eyond the demand that a judge be impartial is the requirement that a judge appear to be impartial so that no doubts or suspicions exist as to the fairness or integrity of the court." *Sears v. Olivarez*, 28 S.W.3d 611, 614 (Tex. App.—Corpus Christi 2000, no pet.); *see also Rogers v. Bradley*, 909 S.W.2d 872, 873 (Tex. 1995) ("Declaration of Recusal" by Gammage, J.) (noting that issue is one of perception). The determination of whether a reasonable person would doubt Judge Mills's impartiality "should be based on a studied analysis of all of the circumstances involved rather than a knee-jerk reaction to one fact in isolation." *Ex parte Ellis*, 275 S.W.3d at 116.

"Courts enjoy a presumption of judicial impartiality." *Id.* at 117 (internal quotations omitted). This presumption stems from "the notion that the conscientious judge will, as far as possible, make himself aware of his biases . . . and, by that very self-knowledge, nullify their effect." *See Liteky v. Unites States*, 510 U.S. 540, 562 (1994) (Kennedy, J., concurring) (internal quotations omitted). As Justice Kennedy explained, "[t]he acquired skill and capacity to disregard extraneous

8

matters is one of the requisites of judicial office." *Id.* Therefore, a "party seeking recusal"—and, by extension, disqualification under article 30.01 of the Code of Criminal Procedure—"must satisfy a high threshold before a judge must be recused." *See Ex parte Ellis*, 275 S.W.3d at 116 (internal quotations omitted). We review Judge Richardson's denial of Fuelberg's motion to disqualify and recuse Judge Mills for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 120 (Tex. Crim. App. 2000). Therefore, we will only reverse Judge Richardson's ruling if it is outside the zone of reasonable disagreement. *Id.*

In this case, Judge Mills's potential interests in the PEC generally and this case specifically can be grouped into two categories—pecuniary and personal. As we explained in our prior opinion, Judge Mills's only pecuniary interest in the PEC "is in the rates that he pays, or should have paid, for utility service, which is indistinguishable from the interest of a public utility customer." *Fuelberg*, 410 S.W.3d at 506; *see also* Tex. R. Civ. P. 18b(d)(4)(E) ("[A]n interest as a taxpayer or utility ratepayer, or similar interest, is not a 'financial interest' unless the outcome of the proceeding could substantially affect the liability of the judge . . . more than other judges."). Similarly, Judge Mills's pecuniary interest in the outcome of this case is very attenuated "because he stood to gain only if Fuelberg was convicted; Judge Mills in his discretion, ordered Fuelberg to pay restitution; the PEC increased the allocations to its members' capital credit accounts based on that restitution; and then the PEC Board, in its discretion, approved a distribution to its members from the increase in their capital credit accounts." *Fuelberg*, 410 S.W.3d at 506. Even if all of those events occurred, Judge Mills stood to gain $5.00 at most from any potential restitution. Having already determined that Judge Mills's pecuniary interest in this case does not support his

9

disqualification, we turn to the issue of whether Judge Mills's personal interests in this case require disqualification or recusal.

Judge Mills's potential personal interest in this case can best be understood as his status as a putative victim of the underlying offenses. *See id.* at 507–08. Fuelberg argues that although Judge Mills is not the victim named in the indictment, as a PEC member he was "among the defendant's victims in the criminal transaction or episode at issue." *See Whitehead*, 273 S.W.3d at 289. Judge Mills's status as a putative victim of Fuelberg's theft, misapplication of fiduciary property, and money laundering could require disqualification or recusal if it would lead a reasonable person to question Judge Mills's ability to remain impartial. *See Fuelberg*, 410 S.W.3d at 507–08.

On remand, Fuelberg introduced expert testimony from Jeffrey Alan Smith, a professional pollster and statistician who has conducted over 400 public opinion polls in his career. Smith testified that he conducted a random survey of 402 adult residents of Bandera County, Texas, who are all customers of the Bandera Electric Cooperative.[5] The survey included the following relevant statements and questions:

> An electric utility cooperative is a non-profit organization that provides utility services to its members. It is overseen by a manager and board of directors whose duty is to operate the utility for its members' benefit. Members have an interest in the efficient management of the co-op that they trust management to protect . . . .

---

[5] According to the State, the Bandera Electric Cooperative has approximately 23,000 members, and therefore is less than 10% the size of the PEC. Smith explained that he chose to interview members of the Bandera Electric Cooperative because he believed they would have "at least a passing familiarity with the concept of an electric co-op" but they would not be "tainted by this particular case."

10

Suppose that the manager of an electric co-op had conspired with the co-op's legal advisor to steal a great deal of co-op funds for their own benefit. Would you consider the co-op members to have been harmed by this theft and breach of trust, even if the financial impact on individual customers was minimal?

. . . .

Suppose that the judge in that trial was a member of the same co-op that the defendants were accused of stealing from. Would it be reasonable to have concerns about the judge being fair and unbiased in that particular case?

According to Smith, 87.6% of those surveyed stated that they believe the members would be harmed by the theft and breach of trust. Furthermore, 70.6% of those surveyed stated that it would be reasonable to have concerns about the judge being fair and unbiased. Smith stated that the poll had a 4.9% margin of error.

Although this statistical evidence is somewhat related to the recusal issue, as Judge Richardson correctly noted in his findings of fact, Smith's survey "did not fully put forward the 'reasonable person' test required to be answered for recusal" and disqualification under *Whitehead*, 273 S.W.3d at 286. First, the survey did not provide all of the relevant facts concerning Judge Mills and this case. *See Ex parte Ellis*, 275 S.W.3d at 116. Among other things, the survey does not mention that the hypothetical utility co-op has over 225,000 members; everyone who lives in the co-op's service area is required to join the co-op; the hypothetical judge could receive at most $5 in restitution from this case; and that restitution would occur only if the co-op's board of directors, in its discretion, increased the allocation to all of the members' capital accounts and then approved distribution from those capital account to the members. *See Fuelberg*, 410 S.W.3d at 506 (discussing Judge Mills's attenuated financial interest in this case).

11

Furthermore, Smith's survey does not pose the appropriate legal question—i.e., whether the survey participant would doubt the hypothetical judge's impartiality. *See Ex parte Ellis*, 275 S.W.3d at 116 (noting correct question is whether member of public would reasonably doubt judge's impartiality). Rather, it asks the survey taker whether "it would be reasonable to have *concerns* about the judge's impartiality." Judge Richardson could have reasonably believed that "concern" is not an appropriate synonym for "doubt," and therefore Smith's survey failed to accurately gauge whether the average survey taker would doubt the hypothetical judge's ability to remain impartial.

Finally, as Judge Richardson correctly noted in his findings of fact, the "'reasonable person' standard is a legal standard," and "evidence derived from survey results attempting to ascertain public opinion related to judicial bias" is not controlling. A reasonable person is "[a] hypothetical person used as a legal standard . . . [and] 'is not necessarily the same as the average man—a term which implies an amalgamation of counter-balancing extremes.'" Black's Law Dictionary 1380 (9th ed. 2009) (quoting R.F.V. Heuston, *Salmond on the Law of Torts* 56 (17th ed. 1977). "[J]udges determine appearance of impropriety—not by considering what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988). Therefore, although the opinion of the average person is related to the opinion of the hypothetical reasonable person, the terms are not synonymous, and public polling is not a substitute for an appropriate legal analysis of the reasonable-person standard.

12

Given that Smith's survey did not provide all of the relevant facts concerning Judge Mills and this trial, the survey did not ask survey takers whether they would doubt the hypothetical judge's impartiality, and surveys generally are not a substitute for the reasonable-person standard, Judge Richardson could have reasonably discounted this survey's probative value. Having determined the relative weight—or lack thereof—of Smith's survey, we turn to Fuelberg's remaining arguments concerning recusal and disqualification.

First, Fuelberg notes that during its closing argument, the State asserted that by stealing from the PEC, Fuelberg was really stealing from "the farmer in Blanco County, the storekeeper in Marble Falls, the homeowner in suburban Austin." In short, the State argued that Fuelberg was stealing from every PEC member, a group which includes Judge Mills. Fuelberg contends that this argument underscores the fact that—even by the State's own admission—all PEC members were the victims of Fuelberg's alleged theft, and therefore Judge Mills was disqualified as a victim.

As we explained in our previous opinion, Judge Mills is disqualified as a party injured if he was a victim of this underlying offense "such that a reasonable person would doubt his impartiality." *See Fuelberg*, 410 S.W.3d at 508. Therefore, the fact that the State characterizes PEC members as victims of Fuelberg's theft does not end the relevant inquiry. The State might similarly characterize taxpayers as victims of public corruption or members of the public generally as victims of insider trading, even though such ubiquitous injuries would not necessarily support a judge's disqualification or recusal. *See Lane v. State*, 634 S.W.2d 65, 66 (Tex. App.—Fort Worth 1982, no pet.) (concluding that judge was not disqualified from presiding over perjury trial where perjury was

13

committed in judge's court). Therefore, the fact that the State chose to characterize PEC members as victims of Fuelberg and Demond's conspiracy does not meaningfully address whether a reasonable person would question Judge Mills's impartiality.

Second, Fuelberg asserts that the venue in this case was transferred from Blanco County, at least in part, based on concerns that the jurors were likely PEC members and therefore may be biased against the defense. *See generally* Tex. Code Crim. Proc. art. 31.03(a)(1) (stating defendant can file motion to change venue if there exists "so great a prejudice against him that he cannot obtain a fair and impartial trial."). According to Fuelberg, this change of venue underscores the fact that membership in the PEC raises concerns of bias or impartiality which would be equally applicable to Judge Mills.

Fuelberg concedes that venue was transferred in this case by consent of the parties, and thus the trial court never found that the prejudice against Fuelberg was so great that he could not receive a fair and impartial trial in Blanco County.[6] *Compare id.* art. 31.03(a)(1), *with id.* art. 31.03(b) (stating venue may be transferred "upon motion of the defendant and with the consent of the attorney for the state" for convenience of the parties or in the interest of justice). However, even if venue had been transferred based on a concern of a tainted jury pool, it does not necessarily follow that Judge Mills should be recused. Judges enjoy a presumption of impartiality, and exercising the ability to disregard extraneous information is one of the skills that is expected of the judiciary. *See Ex parte Ellis*, 275 S.W.3d at 116. Therefore, the same extraneous knowledge that might support

---

[6] The State asserts that the parties agreed to transfer venue because this case received a high level of press coverage in Blanco County.

14

disqualifying a juror or even transferring venue might not support recusing a trial judge. *See id.* (noting that party seeking to recuse judge must satisfy high threshold).

Finally, and perhaps most persuasively, Fuelberg notes that Judge Mills was among the participants in the "Worrall Suit"—a class-action lawsuit brought on behalf of all PEC members against the PEC, Fuelberg, and various PEC officers and directors. The plaintiffs in the Worrall Suit alleged that the defendants breached their fiduciary duties by, among other things, "failing properly to oversee, object to and prevent Fuelberg's . . . lavish self-dealing"; failing to manage, invest, and dispose of PEC members' "capital credit accounts"; and negligently purchasing a for-profit software subsidiary. *See Fuelberg*, 410 S.W.3d at 505 (explaining function of PEC members' capital credit accounts). Judge Mills did not opt out of the Worrall Suit, which was settled by the parties. Judge Mills stated that he did not participate in the Worrall Suit beyond not opting out, that he "did not pretend to know all the terms and conditions" of the suit, and that he only vaguely knew the terms of the settlement agreement. According to the PEC's Chief Financial Officer, Judge Mills had received a distribution from his capital credit account for approximately $18, and under the terms of the settlement agreement, Judge Mills and all other PEC members would likely be receiving additional, nominal distributions in the future.

We recognize that some of the allegations in the Worrall Suit relate to the underlying facts of Fuelberg's criminal trial. However, Judge Mills's financial interest in the settlement of that lawsuit is the same pecuniary interest that we determined was not disqualifying because it is "indistinguishable from the interest of a public utility customer." *See id.* at 506; *see also Gulf Mar. Warehouse Co. v. Towers*, 858 S.W.2d 556, 558 (Tex. App.—Beaumont 1993, writ denied) (noting that pecuniary interest requiring disqualification means same thing as financial interest that might

15

support recusal). The financial compensation that Judge Mills received from the suit is generally the same type of rebate that a public utility customer would receive for previous overpayments. *See Fuelberg*, 410 S.W.3d at 505. Ultimately, there is evidence in the record that Judge Mills did not actively participate in the Worrall Suit, that his interest in this case was indistinguishable from that of the other 225,000 PEC members, that any resident in the PEC's coverage area had to purchase his electricity from the PEC, and that Judge Mills stood to gain $5.00 at most from any restitution that he ordered in this case in addition to the approximately $18 he received under the terms of the Worrall settlement.

Based on the record as a whole, Judge Richardson could have reasonably concluded that a reasonable person would not doubt Judge Mills's ability to remain impartial. *See Ex parte Ellis*, 275 S.W.3d at 116 (noting that courts determine whether judge should be recused "based on a studied analysis of all of the circumstances involved rather than a knee-jerk reaction to one fact in isolation."). Therefore, we cannot say that Judge Richardson abused his discretion in denying Fuelberg's motion to disqualify and recuse Judge Mills. We overrule Fuelberg's first and second appellate issues.

**Admissibility of Duggins's and McNeil's testimony**

In his third, fourth, fifth, and sixth issues on appeal, Fuelberg asserts that the trial court erred in overruling his objections to Duggins's and McNeil's testimony. Specifically, Fuelberg claims that Duggins's and McNeil's testimony about their conversations with Demond constituted inadmissible hearsay that does not fall within a recognized exception. *See generally* Tex. R. Evid. 801–04. Furthermore, Fuelberg argues that the witnesses' testimony violated the

16

Confrontation Clause because Fuelberg could not confront Demond about his out-of-court statements. *See generally* U.S. Const. amend. VI. We address Fuelberg's hearsay and confrontation-clause arguments separately.

*Hearsay*

In his third and fifth issues on appeal, Fuelberg complains that Duggins's and McNeil's testimony about their prior conversations with Demond should have been excluded as hearsay. We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We will uphold the trial court's decision if it is supported by the record and is correct under any theory of applicable law. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Generally, a hearsay statement is not admissible unless the statement falls within a recognized exception to the hearsay rule. *See Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). The State asserts that Duggins's and McNeil's testimony about what Demond told them is not hearsay because it constitutes an admission by Fuelberg's co-conspirator "during the course and in furtherance of the conspiracy." *See* Tex. R. Evid. 801(e)(2)(E) (defining admissions of party-opponent's co-conspirator as not hearsay).

"To come within [the co-conspirator] rule, the State must show that a conspiracy existed, that the co-conspirator was a member of or participated in the conspiracy, and that the statement was made to advance or facilitate the conspiracy." *Maynard v. State*, 166 S.W.3d 403, 411 (Tex. App.—Austin 2005, pet. ref'd). "Statements made in furtherance of a conspiracy include

17

attempts to induce others to cooperate with or assist co-conspirators; attempts to induce another to join or continue with the conspiracy; discussions related to concealment of the conspiracy; or conversations to identify the roles of the conspirators." *Id.*

At trial, the State asserted that Fuelberg conspired with Demond to funnel PEC funds to Curtis and Price. The State also argued that as part of this underlying conspiracy, Fuelberg and Demond conspired to conceal these payments from the PEC board by not identifying who was performing the work for which Clark Thomas was billing. Fuelberg claims that any alleged conspiracy between himself and Demond ended when Clark Thomas made its final payments to Curtis and Price in March 2007. Therefore, according to Fuelberg, Demond's statements to Duggins and McNeil could not have been in furtherance of the conspiracy because those statements were not made until November 2007, January 2008, and December 2008.

Although Fuelberg may be correct that the primary objective of the alleged conspiracy—i.e., funneling PEC funds to Curtis and Price—ended when Clark Thomas stopped making the relevant payments, the State introduced evidence that Fuelberg and Demond engaged in a conspiracy, which continued until the Navigant Report was issued in mid-December 2008, to hide those payments. *See Forman v. United States*, 361 U.S. 416, 423–24 (1960) (concluding evidence supported assertion that conspiracy to evade taxes continued for eight years after last fraudulent tax return was filed because concealment had to continue if evasion was to succeed), *overruled on other grounds by Burks v. United States*, 437 U.S. 1, 18 (1978).[7] "Concealment is sometimes a necessary

---

[7] When, as here, the Texas Rules of Evidence are patterned on their federal counterparts, we find it appropriate to look to federal cases and commentary for guidance. *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

part of a conspiracy, so that statements made solely to aid the concealment are in fact made during and in furtherance of the charged conspiracy." *United States v. Mann*, 161 F.3d 840, 857 (5th Cir. 1998). Thus, the fact that Demond's statements to Duggins and McNeil occurred after the underlying theft, misapplication of fiduciary property, and money laundering were completed does not mean that those statements were not in furtherance of Demond's alleged conspiracy with Fuelberg. *See United States v. Godinez*, 110 F.3d 448, 454 (7th Cir. 1997) ("It is irrelevant that the [co-conspirator's statements were] not made within the time frame charged in the indictment.").

The State introduced testimony that in 2004, Fuelberg instructed Demond not to respond to the PEC's request for an explanation of Clark Thomas's $7,000 monthly bill that paid for Curtis's salary and Price's retainer. Similarly, Duggins testified that during his conversation with Demond in November 2007, Demond told Duggins that none of Curtis's or Price's payments were being paid with PEC funds. Finally, both McNeil and Duggins testified that days before the Navigant Report was issued, Demond finally explained his arrangement with Fuelberg to have Clark Thomas pay Curtis and Price and then bill the PEC for the majority of those payments. Demond's alleged statements to McNeil and Duggins could arguably be seen as an attempt to encourage them to help Demond conceal the conspiracy in order to protect Clark Thomas.

Based on this record, the trial court could have reasonably concluded that Demond's statements to Duggins and McNeil were in the course of and in furtherance of a conspiracy between Demond and Fuelberg to conceal theft, misapplication of fiduciary property, and money laundering from the PEC. Therefore, we cannot conclude that the trial court abused its discretion in admitting Duggin's and McNeil's testimony as a non-hearsay admission by a co-conspirator. We overrule Fuelberg's third and fifth appellate issues.

19

*Confrontation Clause*

In his fourth and sixth issues on appeal, Fuelberg asserts that Duggins's and McNeil's testimony concerning Demond's previous out-of-court statements violated the Confrontation Clause. Specifically, Fuelberg argues that he could not cross-examine Demond about the statements because Demond could invoke his right to remain silent. *See* U.S. Const. amend. V; *Mendez v. State*, 56 S.W.3d 880, 892 (Tex. App.—Austin 2001, pet. ref'd) (introducing confession of non-testifying accomplice violated defendant's Sixth Amendment rights).

The Confrontation Clause to the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U. S. Const. amend. VI. Generally, courts have construed the Confrontation Clause to prohibit prosecutors from admitting "testimonial" out-of-court statements against a defendant unless the defendant has been afforded the opportunity to cross-examine the declarant. *See De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). A statement is testimonial "when the surrounding circumstances objectively indicate that the primary purpose" for the declarant making the statement was "to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (internal citations omitted).

"Generally, a co-conspirator's statements made in furtherance of the conspiracy are nontestimonial." *King v. State*, 189 S.W.3d 347, 359 (Tex. App.—Fort Worth 2006, no pet.) (citing several federal and Texas cases supporting proposition); *see also Crawford v. Washington*, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, . . . statements in furtherance of a conspiracy."). As we have already

20

concluded, the trial court could have reasonably determined that Demond's statements to Duggins and McNeil were made in furtherance of a conspiracy between Demond and Fuelberg to conceal theft, misapplication of fiduciary property, and money laundering. Therefore, we cannot conclude that the trial court abused its discretion in determining that Demond's out-of-court statements were non-testimonial, and thus Duggins's and McNeil's testimony did not violate the Confrontation Clause. *See id.* We overrule Fuelberg's fourth and sixth appellate issues.

### Restitution

In his seventh and final issue on appeal, Fuelberg asserts that the trial court abused its discretion in ordering him to pay $126,000 in restitution. Specifically, Fuelberg asserts that because the jury only convicted him of third-degree felony theft, misapplication of fiduciary property, and money laundering, the jury implicitly found that Fuelberg at most stole, misapplied, or laundered $100,000. *See* Tex. Penal Code §§ 31.03(e)(5), 32.45(c)(5), 34.02(e)(2). Therefore, according to Fuelberg, the trial court abused its discretion in ordering restitution above the amount reflected in the jury's verdict.

We review a trial court's restitution order for an abuse of discretion. *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980). "The amount of the restitution must be just, and it must have a factual basis within the loss of the victim." *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999). In determining the appropriate amount of restitution, the court must consider (1) the amount of loss sustained by the victim and (2) other factors the court deems appropriate. Tex. Code Crim. Proc. art. 42.037(c). The victim's "loss must be a 'but for' result of the criminal offense and resulted 'proximately,' or foreseeably, from the criminal offense." *Hanna*

21

*v. State*, 426 S.W.3d 87, 95 (Tex. Crim. App. 2014). The State bears the burden of proving the amount of restitution, but unlike the guilt-innocence phase of trial, the amount of restitution need only be proven by a preponderance of the evidence. *See* Tex. Code Crim. Proc. art. 42.037(k).

Fuelberg concedes that there is a factual basis to support $86,000 for restitution—the amount of PEC funds used for Price's retainer.[8] The State asserts that in addition to this $86,000, there was reliable testimony that the PEC spent between $40,000 and $56,000 during the investigation for the Navigant Report to try to recover data that Fuelberg deleted from four of his laptops. *See Campbell*, 5 S.W.3d at 701 (noting that amount of restitution is not limited by property-value range reflected in indictment or conviction). In response, Fuelberg argues that the testimony about the PEC's investigation costs is insufficient to justify the restitution because (1) the witness estimated some of the work hours that went into recovering the lost data; (2) the data recovery process began before the investigators learned that PEC funds were being used to pay Price's retainer, and therefore could not have related to investigations of payments to Price; and (3) the witness could only provide some documentation to support his estimates, and some of that documentation was arguably inconsistent with his valuation.

Evidence of damages can come from many sources, including expert testimony, estimates from insurance adjusters, and lay testimony from a property owner about the value of

---

[8] Fuelberg asserts—and the trial court appears to have believed—that based on the record and the jury's verdict, the jury must have concluded that the PEC received fair value for Curtis's lobbying work, and thus the PEC's payments to Curtis cannot form the basis for the restitution order. We need not reach this issue because, as we will explain, there is a sufficient factual basis to affirm the trial court's restitution order regardless of whether it includes restitution for money paid to Curtis.

22

his property. *See Campbell v. State*, 426 S.W.3d 780, 783–84 (Tex. Crim. App. 2014) (explaining different methods of proving damages for restitution). The Navigant investigator's estimate of the cost of trying to recover the data that Fuelberg deleted was supported in part by copies of the Navigant's bills to the PEC and the investigator's own recollection of hours spent on the data recovery. Thus, the witness's testimony was supported both by his first-hand knowledge of the work done and documentation of the costs. Similarly, the fact that the bills did not separately delineate the cost of data recovery does not make the evidence insufficient because the witness was able to independently approximate the work done in the recovery effort. *See Elomary v. State*, 796 S.W.2d 191, 193–94 (Tex. Crim. App. 1990) (explaining why insurance adjuster estimate of damage is sufficient to support restitution order).

Finally, we find Fuelberg's argument that the PEC should not be entititled to restitution for costs that it incurred before it learned that PEC funds were being paid to Price unconvincing. The Navigant investigator testified that Navigant ultimately could recover little relevant data from Fuelberg's computers because it had been so thoroughly deleted. However, Navigant was able to recover subject lines from several emails indicating that the computers did contain emails from Fuelberg to Demond concerning the PEC's payments to Clark Thomas. Therefore, the trial court could have reasonably concluded that Fuelberg had intentionally deleted the information on the laptops to conceal incrementing information about his conspiracy to use PEC funds to pay Price's retainer. The fact that Fuelberg was extremely successful in deleting the data from his computer does not mean that the PEC's investigation expenses are not

23

compensable—rather, the investigation expenses are another injury that the PEC bore as a result of Fuelberg's complicated theft, misapplication, and money laundering offenses.

The record contains a factual basis for the trial court's determination that the PEC incurred at least $40,000 in investigation expenses for the data that Fuelberg deleted from his computers. Given that Fuelberg concedes that the record supports the remaining $86,000 in restitution, we conclude that the trial court did not abuse its discretion in ordering a total of $126,000 in restitution. We overrule Fuelberg's seventh and final issue on appeal.

## CONCLUSION

Having overruled Fuelberg's seven appellate issues, we affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: July 16, 2014

Publish

24